*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) ) ) | Supreme Court Nos. S-18318/18357 (Consolidated) |
| | ) | |
| Appellant and Cross-Appellee, | ) ) ) | Superior Court No. 3AN-18-10683 CI |
| | ) | O P I N I O N |
| v. | ) ) | No. 7771 – May 23, 2025 |
| JEANNIE DUVALL, | ) ) | |
| Appellee and Cross-Appellant. | ) ) ) ) | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) ) ) | Supreme Court Nos. S-18420/18570 (Consolidated) |
| | ) | |
| Appellant and Cross-Appellee, | ) ) ) | Superior Court No. 3AN-19-09013 CI |
| v. | ) ) ) | |
| ALLEASE RIDDLE, | ) ) | |
| Appellee and Cross-Appellant. | ) ) ) ) | |

<table>
<tr><td>

PORTFOLIO RECOVERY
ASSOCIATES, LLC,

   Appellant,

 v.

LORRENA TERRY,

   Appellee.

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

Supreme Court Nos. S-18536/18685
(Consolidated)

Superior Court No. 3AN-19-07274 CI

</td></tr>
</table>

Appeals in File Nos. S-18318/18357 from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Dani Crosby, Judge. Appeals in File Nos. S-18420/18570 from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Thomas A. Matthews, Judge. Appeals in File Nos. S-18536/18685 from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Una S. Gandbhir, Judge.

Appearances: Mara E. Michaletz and Shane C. Coffey, Birch Horton Bittner & Cherot, Anchorage, and George M. Cruickshank, Gordon Rees Scully Mansukhani, LLP, Anchorage, for Appellant and Cross-Appellee Portfolio Recovery Associates, LLC. Goriune Dudukgian and James J. Davis Jr., Northern Justice Project, LLC, Anchorage, for Appellees and Cross-Appellants Jeannie Duvall and Allease Riddle and Appellee Lorrena Terry.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

MAASSEN, Chief Justice.

## I. INTRODUCTION

In this opinion we decide appeals from the decisions of three different superior court judges. We address the appeals together because of the cases' similar facts and common legal issues.

Portfolio Recovery Associates, LLC, is a large-scale debt purchaser that brought suit against three credit card holders for past-due debt. The consumers all asserted counterclaims, arguing that Portfolio's debt-collection practices violated Alaska's Unfair Trade Practices and Consumer Protection Act (UTPA). In each of the three cases the superior court ruled in the consumer's favor on Portfolio's debt-collection claim, finding that Portfolio had not presented sufficient admissible evidence to prove either its ownership of the debt or the amount owed. The three courts also ruled in favor of the consumers on at least some of their UTPA counterclaims, finding that the consumers were therefore entitled to statutory damages and attorney's fees.

Portfolio appeals the superior court judgments, including the awards of attorney's fees in two of the cases. In the third case the consumer appeals the attorney's fees award as insufficient.

We affirm the three courts' rulings on the merits of the debt-collection claim and the consumers' UTPA counterclaims. We also affirm their rulings on statutory damages and attorney's fees awards, with two exceptions. In one case we remand the attorney's fees award to the superior court for further consideration, given what we perceive as conflicts between its specific findings and the overall amount awarded; in another case we direct the superior court to correct a small error in the amount awarded.

## II. FACTS AND PROCEEDINGS

### A. *Portfolio v. Duvall*

#### 1. Facts

In September 2013 Jeannie Duvall obtained a Sam's Club credit card issued by Synchrony Bank. She made her last purchase with the card in May 2016 and

her last payment on the account the following January. Synchrony Bank purportedly sold Duvall's overdue account to Portfolio later that year. Portfolio filed suit against Duvall in district court in October 2018, seeking to recover an alleged credit card debt of $2,551.06, which included the principal balance as well as late fees and interest.

## 2. Relevant proceedings

Duvall was unrepresented when she first answered Portfolio's complaint, but after obtaining counsel she filed an amended answer and counterclaims. The counterclaims asserted that Portfolio violated the UTPA[1] by (1) filing a debt-collection suit without having the evidence, or the ability to get the evidence, that could establish its ownership of the debt; (2) failing to produce the original credit card application or another written statement by Duvall indicating that she accepted the card, as required by AS 06.05.209(a);[2] and (3) seeking to collect interest and late charges not expressly authorized by the parties' agreement or some other law. Duvall asked for statutory damages and injunctive relief under the UTPA,[3] as well as attorney's fees. Because of her request for injunctive relief, the action was removed to superior court.

Duvall moved for summary judgment on her third counterclaim: that Portfolio sought to collect unauthorized interest and late charges in addition to the principal. Duvall argued that this claim required Portfolio to "produce the *actual* contract by which the consumer expressly agreed to pay the additional charges" or show that the charges were expressly authorized by state law; because Portfolio could not do

---

[1]     *See* AS 45.50.471–.561.

[2]     Alaska Statute 06.05.209(a) provides that although a bank may issue "unsolicited credit cards," it "may not hold the customer liable for charges made on a credit card or other device before its acceptance by the customer," which requires that the customer "execute and furnish to the bank a written statement of acceptance."

[3]     *See* AS 45.50.535 ("[A]ny person who was the victim of the unlawful act, whether or not the person suffered actual damages, may bring an action to obtain an injunction prohibiting a seller or lessor from continuing to engage in an act or practice declared unlawful under AS 45.50.471.").

so, Duvall argued, she was entitled to summary judgment.  (Emphasis in original.)
Portfolio cross-moved for summary judgment on the same counterclaim.

The superior court granted Duvall's motion, ruling that Portfolio violated the Fair Debt Collection Practices Act (FDCPA),[4] and thus the UTPA,[5] when it sought to collect fees not expressly authorized by law.[6]  The court determined that Portfolio was unable to produce admissible evidence of the original credit card agreement, which it needed in order to make the prima facie showing necessary to a breach-of-contract claim.  The court further determined that two of Portfolio's affidavits — one from a Portfolio employee and one from a Synchrony Bank employee — were inadmissible hearsay that did not fall under the business records exception[7] and therefore could not be used to support Portfolio's claim that Duvall owed the debt.

---

[4]     *See* 15 U.S.C. §§ 1692–1692p. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id.* § 1692(e).

[5]     *Alaska Tr., LLC v. Ambridge*, 372 P.3d 207, 226 (Alaska 2016) (holding that violation of FDCPA is necessarily violation of UTPA).

[6]     15 U.S.C. § 1692f(1) ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.").

[7]     *See* Alaska R. Evid. 803(6) (creating hearsay exception for "[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge acquired of a regularly conducted business activity, and it if was the regular practice of that business activity to make and keep the memorandum, report, record, or data compilation, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness").

Duvall next filed a motion in limine seeking to prevent Portfolio from asserting an account stated cause of action at trial.[8] Duvall argued that Portfolio failed to adequately plead such a claim and, alternatively, that Alaska law does not recognize it. Portfolio argued in opposition that the account stated cause of action was sufficiently pled under Alaska's lenient pleading standard and that Duvall had waived any arguments about the sufficiency of the pleadings at this advanced stage of the litigation. But the court granted Duvall's motion, concluding both that an account stated cause of action has not been recognized in Alaska law and that Portfolio had failed to adequately plead it.

To replace the two witnesses whose testimony the court had found inadmissible on summary judgment, Portfolio filed a supplemental witness list identifying a new witness, a Synchrony Bank management employee named Catiana Eilum. Duvall moved to exclude her from testifying, arguing that Portfolio had long been on notice that it would need a witness to authenticate Synchrony Bank's business records and that there was no justification for the late disclosure. Portfolio responded that it had not known it would need such a witness until the court's summary judgment order rejected its reliance on the "adoptive business records" exception to the hearsay

---

[8] The account stated cause of action essentially allows the holder of a debt to rely on the amount claimed due in a final accounting, rather than the parties' contract, as proof of the debt. *See* RESTATEMENT (SECOND) OF CONTRACTS § 282 cmt. c (AM. L. INST. 1981). If the debtor failed to object when that account stated was presented, it is presumed to be correct for purposes of the litigation. *Id*. cmt. b. State courts have reached different conclusions about whether to allow the cause of action in the consumer debt context. *See* Emanwel J. Turnbull, *Account Stated Resurrected: The Fiction of Implied Assent in Consumer Debt Collection*, 38 VT. L. REV. 339, 341 (2013). Alaska has never formally recognized an "account stated" cause of action.

rule[9] and that the late disclosure caused Duvall no prejudice. But the court agreed with Duvall's arguments and excluded Eilum's testimony.

At the start of the bench trial, Portfolio asked the court to reconsider its rulings on both the excluded witness and the account stated claim, but the court declined to do so. Portfolio called two witnesses: Duvall and one of its employees, Meryl Dreano.

Throughout the trial Portfolio attempted to admit various documents into evidence through the business records exception to hearsay,[10] and Duvall repeatedly objected on hearsay grounds. The court reserved ruling on the objections and allowed the parties to proceed as if the contested documents were admitted. The documents included the following: (1) account statements; (2) a bill of sale between Synchrony Bank and Portfolio; (3) load data;[11] (4) the cardmember agreement in effect at the time

---

[9] Under the adoptive business records doctrine, " 'a record created by a third party and integrated into another entity's records' can be 'admissible as the record of the custodian entity,' so long as certain other requirements are met that fully satisfy the strictures of Rule 803(6) [the 'business records' exception to the hearsay rule]." *United States v. Powers*, 578 F. App'x 763, 778 (10th Cir. 2014) (quoting *Brawner v. Allstate Indem. Co.*, 591 F.3d 984, 987 (8th Cir. 2010)). Alaska has not recognized the doctrine, and other courts' approaches to it vary.

[10] Alaska R. Evid. 803(6).

[11] A Portfolio witness described the document the parties refer to as "load data" as "an excerpt from the electronic sale file that was provided to [Portfolio] upon the purchase of the pooled accounts in Synchrony Bank." The sale file was created by Synchrony Bank, and the "load data" excerpt — containing the data specific to a particular account holder — was generated by Portfolio's own IT department "[s]ome time after [Portfolio] purchased the pool of accounts." *See Collins v. Portfolio Recovery Assocs., LLC*, No. 2:12-cv-138, 2013 WL 9805805, at *1 n.1 (E.D. Tenn. 2013) (relying on Portfolio witness's testimony to define load data as "a portion of an electronic sale file which contains information for a specific account, including the account[']s number, the interest rate, the debtor's personal information, the date that the account was opened, the date of the first delinquency, the charge-off date, the last payment date, the charge-off amount, the total balance, and the amount of post[-]charge-off interest and fees").

of charge-off (that is, at the time Synchrony Bank determined that the account was not worth pursuing)[12]; (5) letters Portfolio sent to Duvall; (6) a letter from Synchrony Bank to Duvall informing her that her account had been sold to Portfolio; (7) the account purchase agreement; (8) various bank records; (9) an "affidavit of sale"; and (10) a demonstrative exhibit created by Portfolio's counsel summarizing relevant Synchrony Bank records.

Dreano testified about some of these documents as Portfolio's records custodian. She testified that the terms and conditions of an account Portfolio acquires are those that were in place at the time of charge-off. She explained that Portfolio would have an account's original terms and conditions — those existing as of the time the account was first opened — only if the account had been active only briefly and the original terms and conditions could not have changed before charge-off. She testified that it might be difficult for Portfolio to obtain the original cardmember agreement, with the terms and conditions as originally presented, because banks do not retain records indefinitely. She also testified, however, that credit card agreements are generic and generally allow the issuing bank to alter the terms and conditions unilaterally. Though conceding on cross-examination that she did not know the terms and conditions of Duvall's original cardmember agreement, she testified that they would necessarily have been "very similar to" those in the agreement Synchrony Bank forwarded to Portfolio with the sale of Duvall's debt.

At the end of trial Portfolio again asked the court to reconsider its decision to exclude the late-disclosed Synchrony Bank witness; the court again declined.

---

[12] To "charge off" is "[t]o treat (an account receivable) as a loss or expense because payment is unlikely." *Charge Off,* BLACK'S LAW DICTIONARY (12th ed. 2024); *Anderson v. Credit One Bank, N.A. (In re Anderson)*, 884 F.3d 382, 385 (2d Cir. 2018) (charged-off debt "means the bank changed the outstanding debt from a receivable to a loss in its own accounting books").

Portfolio represented that the witness would have been prepared to authenticate the bank documents on which Portfolio relied for its claim and defenses.

The court later issued a written ruling on Duvall's evidentiary objections. It first addressed Portfolio's reliance on the adoptive business records doctrine.[13] The court noted that Alaska law has not explicitly considered the doctrine but that many other jurisdictions have recognized some form of it. The court accordingly analyzed Portfolio's exhibits in the context of the traditional business records exception with some refinement: it would allow a witness to authenticate another business's records if "[t]he records are relied upon by the integrating business in its regular course of business" and "the witness provides sufficient additional indicia of trustworthiness or reliability" such that the records' accuracy is not subject to reasonable doubt.

The court had already admitted at trial the purchase agreement and Duvall's bank records. By its post-trial order the court also admitted the credit card account statements, the load data, and the letters from Portfolio to Duvall, but only as evidence that Portfolio owned Duvall's debt, not for the truth of the amount claimed to be owed. The court also admitted Synchrony Bank's letter to Duvall about the sale of her account to Portfolio, but again only as evidence that Portfolio now owned Duvall's debt. The court admitted the bill of sale for its truth.

The court did not admit the cardmember agreement, concluding that Portfolio had failed to lay a foundation through Dreano sufficient to show that the agreement at the time of charge-off was the same as when the debt was created. The court also declined to admit the affidavit of sale from Synchrony Bank, since Dreano lacked personal knowledge of the bank processes to which the affidavit referred. Finally, the court declined to admit the demonstrative exhibit because some of the documents it summarized had been found inadmissible.

---

[13]     *See supra* note 9.

In its final written decision, the court found that Portfolio had failed to prove through admissible evidence that it had a right to collect the debt from Duvall. The court reasoned that Portfolio had failed to prove that Duvall owed the claimed amount to Synchrony Bank at the time Portfolio purchased the debt. Because the court had admitted most exhibits only as proof that Portfolio now owned Duvall's debt, not as proof of the actual amount owed, "[f]or this reason alone," the court found that Portfolio's claim failed.

The court ruled against Duvall on her two remaining counterclaims. On the first one — that Portfolio violated the UTPA by filing suit without the evidence, or ability to get the evidence necessary to prove ownership and validity of the debt — the court found that Portfolio had proven its ownership of the debt and Duvall had not proven that Portfolio was categorically unable to obtain evidence proving the debt's validity because timely disclosure of the Synchrony Bank witness may have allowed it to prove its claim. On Duvall's second counterclaim — that Portfolio violated the UTPA by failing to produce the credit card application or written statement of acceptance required by AS 06.05.209(a) — the court concluded that the claim failed because the statute applies only to "unsolicited credit cards"[14] and Duvall had failed to prove that her Sam's Club credit card was unsolicited. The court declined to enjoin Portfolio's debt-collection practices.

Finally, the court awarded Duvall $500 in statutory damages because she had testified about parking fees and lost wages incurred as a result of Portfolio's suit, which sufficiently demonstrated the "ascertainable loss" required by the UTPA to

---

[14] AS 06.05.209(a) ("A bank is not prohibited from issuing unsolicited credit cards or other similar credit granting devices but the bank may not hold the customer liable for charges made on a credit card or other device before its acceptance by the customer. Before an unsolicited card is considered accepted by the customer, the customer shall execute and furnish to the bank a written statement of acceptance.").

justify a statutory damages award.[15]  The court entered a final judgment that included the $500 damage award and $1,363.75 in costs.

Duvall then moved for full reasonable attorney's fees under the UTPA.[16] Because she had prevailed on one of her UTPA claims on summary judgment, the court awarded her attorney's fees up to the date of that summary judgment order.  But the court awarded only half of the claimed fees up to that date, reasoning that Duvall's attorneys had been working on the unsuccessful counterclaims as well as the successful one, and given the overlap among the claims it was "impossible to allocate a specific amount of attorney fees to work performed in relation to each category."  The court awarded Duvall, as the prevailing party, 30% of her remaining attorney's fees under Alaska Civil Rule 82.[17]  Thus calculated, the attorney's fees award totaled $43,833.38.

Portfolio appeals the superior court's grant of summary judgment on Duvall's first counterclaim and its rejection of Portfolio's debt-collection claim following trial.  Duvall cross-appeals the award of attorney's fees, arguing that the court erred by awarding less than full fees for work performed before the grant of summary judgment and erred again by applying Rule 82 rather than the UTPA to the fees incurred afterward.

---

[15]     AS 45.50.531(a) ("A person who suffers an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by AS 45.50.471 may bring a civil action to recover for each unlawful act or practice three times the actual damages or $500, whichever is greater.").

[16]     AS 45.50.537(a) ("In an action brought by a private person under [the UTPA], a prevailing plaintiff shall be awarded costs as provided by court rule and full reasonable attorney fees at the prevailing reasonable rate.").

[17]     *See* Alaska R. Civ. P. 82 (allowing prevailing party to recover percentage of reasonable, actual attorney's fees).

### B.    *Portfolio v. Riddle*

#### 1.    Facts

Allease Riddle obtained a Best Buy credit card issued by Citibank in 2016. She made payments on the account until November 2017, and Citibank purportedly sold the debt to Portfolio the following April.  Portfolio sued Riddle in 2019 to collect an alleged unpaid balance of $2,603.68.

#### 2.    Relevant proceedings

Like Duvall, Riddle brought counterclaims in an amended answer, asserting that Portfolio violated the UTPA by (1) filing a debt-collection suit without evidence, or the ability to obtain the evidence, that could establish its ownership and the validity of the debt; and (2) seeking to collect fees and charges not expressly authorized by the agreement creating the debt or some other law.  Riddle asked for statutory damages, injunctive relief, and attorney's fees.  As in *Duvall*, the case was removed to superior court.

Riddle moved for summary judgment on both Portfolio's debt-collection claim and her first counterclaim.  She argued that because Portfolio was not the original creditor and thus lacked privity of contract with her, it had to show a "complete chain of assignments from the original creditor to itself" in order to have standing to sue on the debt.  She asserted that Portfolio had not produced any documents that specifically named her and that it could not rely on affidavits alone to prove the chain of ownership. Regarding her first UTPA counterclaim, Riddle argued that she was entitled to judgment because Portfolio had failed to establish its ownership of the debt.

Portfolio opposed Riddle's motion, arguing that it had the necessary standing to collect on her account because its evidence established a complete chain of title.  It disputed Riddle's assertion that the evidence did not specifically reference her, pointing to an identification number on the documents.  It cross-moved for summary

judgment on its debt-collection claim; both parties submitted affidavits and exhibits.[18] Portfolio later supplemented its cross-motion with additional discovery responses, the declaration of a Citibank document control officer, and other information related to the Best Buy credit card account.

The court granted Riddle's motion for summary judgment. It first examined Portfolio's bill of sale and reasoned that because it did not contain any reference to Riddle's account, it could not be used to show that her account was one of the debts transferred to Portfolio in the sale. The court rejected the offered affidavits of Citibank and Portfolio employees as evidence of Portfolio's ownership of the debt, finding them deficient under Alaska Civil Rule 56(e)[19] because they were not based on the affiants' personal knowledge and failed to include the Citibank records to which they referred. The court also addressed the business records exception to hearsay, concluding that the deposition testimony of Dreano, a Portfolio employee, could not lay a foundation for records created by Citibank.

Having found most of Portfolio's evidence inadmissible, the court concluded that Portfolio failed to establish its ownership of Riddle's account and therefore lacked standing to pursue the debt. The court accordingly granted summary judgment in Riddle's favor on both Portfolio's debt-collection claim and Riddle's

---

[18] Riddle attached several documents to her declaration: Portfolio's discovery responses, the bill of sale, affidavit of sale, and affidavits of debt (from an employee of Citibank and an employee of Portfolio). Riddle's declaration also referred to the purchase agreement between Portfolio and Citibank. Portfolio offered an affidavit of its employee Dreano, with attachments including a cardmember agreement, account statements, the bill of sale and load data, and correspondence between Portfolio and Riddle. While it is not entirely clear from the record, it appears that only the bill of sale, purchase agreement, and correspondence between Portfolio and Riddle were admitted, along with Portfolio's discovery responses.

[19] See Alaska R. Civ. P. 56(e) (providing that documents referenced in affidavits must be submitted at same time).

counterclaim challenging the evidentiary basis for Portfolio's suit. The parties agreed to the dismissal of Riddle's remaining counterclaim.

The court next invited briefing on whether Riddle had suffered an "ascertainable loss of money or property" which would entitle her to statutory damages under the UTPA.[20] Riddle filed an offer of proof and a supplemental affidavit, citing transportation and parking expenses as well as attorney's fees. The court ultimately accepted the offer of proof and entered final judgment for Riddle in the amount of $500.

Riddle then sought full attorney's fees under the UTPA.[21] Portfolio countered that an award should be no more than half the amount requested because Riddle had succeeded on only one of her two UTPA-based counterclaims, arguing in the alternative that if the court declined to apply a percentage-based reduction it should reduce the baseline amount requested by applying the traditional lodestar method and considering various equitable factors (the *Johnson-Kerr* factors[22]).

The court formulated its attorney's fees award in three steps. It first awarded Riddle 20% of the fees incurred before she filed her UTPA counterclaims, applying the presumptive rate under Rule 82 for "cases in which the prevailing party recovers no money judgment" and the case is "resolved without trial."[23] Second, for fees recoverable under the UTPA, the court reviewed the attorneys' billings and determined that while the amount requested was "disproportionate to the amount in

---

[20]     *See* AS 45.50.531(a).

[21]     *See* AS 45.50.537(a).

[22]     In determining a reasonable fee award, a court may start with a so-called "lodestar" — the number of hours the attorney reasonably spent on the case multiplied by a reasonable hourly rate — then adjust the lodestar up or down by reference to "the *Johnson-Kerr* factors," which "are similar to the factors we apply to determine reasonable attorney's fees in other situations using Alaska Rule of Professional Conduct 1.5(a) and Alaska Bar Rule 35(a)." *Adkins v. Collens*, 444 P.3d 187, 199-200 (Alaska 2019).

[23]     Alaska R. Civ. P. 82(b)(2).

controversy," "nothing appear[ed] to be unnecessary or out of the ordinary." The court rejected Portfolio's argument that the award should be cut in half to reflect Riddle's 50% success rate on the two counterclaims, reasoning that "proportionality is irrelevant under the UTPA." The court nonetheless found that "both sides engaged in excessive litigation in this case," and it therefore could not find Riddle's 100% fee request was reasonable. The superior court instead concluded that 60% of the fee request was reasonable. Finally, the court awarded Riddle 100% of her fees incurred litigating attorney's fees under the UTPA, for a total fees award of $48,146.30.

Portfolio appeals the court's decision on the merits, arguing that the court erred in its rulings on the debt-collection claim, Riddle's counterclaim, and Riddle's entitlement to statutory damages. Riddle cross-appeals the attorney's fees award, arguing that the court abused its discretion by awarding only 60% of her fees for the bulk of the time expended.

## C. *Portfolio v. Terry*

### 1. Facts

The facts of Lorrena Terry's case are similar to those in *Duvall* and *Riddle*. Terry obtained a Northrim Bank Visa credit card issued by U.S. Bank in 2016. Her account was charged off in 2017, and in June 2018 U.S. Bank sold Portfolio a number of debts, allegedly including Terry's. The following April Portfolio sued Terry for $2,244.19.

### 2. Relevant proceedings

Terry's amended answer included three counterclaims, asserting that Portfolio violated the UTPA by (1) filing a debt-collection suit without the evidence, or the ability to get the evidence, establishing its ownership and the validity of the debt; (2) seeking to collect fees not expressly authorized by the agreement creating the debt or otherwise permitted by law; and (3) seeking to collect fees and charges that had been "reversed by the original creditor." Terry asked for statutory damages, injunctive relief, and attorney's fees, and the case was removed to superior court.

Terry moved for summary judgment on her second and third counterclaims. She argued that a substantial portion of what Portfolio sought to collect represented fees and interest and that Portfolio could not provide any evidence of an original agreement that authorized these charges. She also argued that approximately $250 in late fees and interest charges had been reversed by U.S. Bank, the original creditor, before any assignment. She asserted that to the extent Portfolio was an assignee of a debt, it had no right to collect more than the principal, and its attempt to do so violated both the UTPA and the FDCPA.

Portfolio opposed the motion and cross-moved for summary judgment. It contended that its evidence proved its ownership of the debt and that Terry had agreed to the imposition of late fees and interest. It disputed Terry's assertion that U.S. Bank had reversed some charges. Finally, it argued that it was entitled to summary judgment on its debt-collection claim under an account stated theory. The court denied both sides' motions.

Before trial Terry filed a motion in limine to exclude the testimony of a U.S. Bank employee, Carolyn Surtin, on grounds that she had not been timely disclosed. The court granted the motion, citing Alaska Civil Rule 37(c)(1).[24] Terry filed a second motion in limine seeking to preclude Portfolio from asserting an account stated cause of action at trial. The court granted this motion as well, reasoning that while Alaska has a lenient pleading standard, Portfolio had not attempted to plead an account stated cause of action until the summary judgment phase, and besides, Alaska law had yet to recognize the cause of action as valid.

---

[24] The rule provides: "A party that without substantial justification fails to disclose information required by [the discovery rules] shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."

The court held a three-day bench trial. It heard testimony from Dreano, Portfolio's records custodian; Katey Redell, a litigation manager at U.S. Bank; and Terry. As in *Duvall*, Portfolio attempted to enter into evidence a number of documents to which Terry objected. As in *Duvall*, the court reserved judgment on the objections, allowing trial to proceed as if the evidence was admitted while noting Terry's standing hearsay objection. The challenged evidence included the following: (1) a bill of sale; (2) load data; (3) the cardmember agreement applicable at charge-off; (4) account statements; (5) letters from Portfolio to Terry; (6) a sale notification letter from U.S. Bank to Terry; (7) a purchase agreement; (8) a cardmember agreement dated August 19, 2016; and (9) the bill of sale "without certain [r]edactions."

Following trial the court issued a written order resolving the outstanding evidentiary issues. With limited exceptions, it held that all the challenged documents were inadmissible hearsay.[25] Specifically, it found that while Dreano, Portfolio's employee, was familiar with her employer's business practices of purchasing consumer debt and the types of documents that accompanied those transactions, she lacked "personal knowledge of both Terry's alleged account specifically and the specifics of [Portfolio's] business more broadly." As for the U.S. Bank records, the court found that Dreano was "entirely lacking in personal knowledge," having never worked for U.S. Bank or "communicated directly with U.S. Bank about their document creation and retention practices." Furthermore, the court was "under the impression that . . . Dreano [was] in a mostly managerial position" and had little first-hand knowledge of even her own employer's recordkeeping practices.

---

[25] The court admitted some exhibits for limited purposes. The bill of sale was admitted only "for purposes of addressing Terry's UTPA claim." The correspondence from Portfolio to Terry was admitted for the limited purpose of showing that the letters were sent. The purchase agreement was "admissible for purposes of Terry's UTPA claim."

Although Redell, Portfolio's other witness, was an employee of U.S. Bank, the court questioned her personal knowledge too, as well as the trustworthiness of her testimony. First, the court found her work in "recovery litigation" to "raise[] an immediate red flag," as documents created for litigation are hard to square with the rationale for the business records exception to the hearsay rule.[26] Ultimately the court found that Redell lacked personal knowledge "with regards to the [U.S. Bank] documents generally," "any documents purportedly pertaining to Terry specifically," and "when and how each of the records [was] created."

The court later issued its decision on the merits, ruling in favor of Terry on Portfolio's debt-collection claim and on her first and second counterclaims.[27] On the collection claim, the court found that Portfolio had failed to establish through admissible evidence the basic elements of contract creation — including an offer, essential terms, and a mutual intent to be bound — and thus failed to prove that it had a contract with Terry.

On Terry's first counterclaim — that Portfolio violated the UTPA by filing a debt-collection suit without the evidence to prove it — the court found that Portfolio had engaged in unfair practices by pursuing a "long, drawn-out crusade against Terry," which was "not only disproportionate and unfair, but deceptive." The court found deception in Portfolio's insistence that it had the evidence to prove Terry's

---

[26] *See Wassillie v. State*, 411 P.3d 595, 601 (Alaska 2018) (noting documents with "primary utility . . . in litigating" lacked "character of [business] records and their earmarks of reliability acquired from their source and origin and the nature of their compilation" (alteration in original) (quoting *Palmer v. Hoffman*, 318 U.S. 109, 114 (1943))).

[27] Terry had earlier abandoned her third counterclaim — alleging a UTPA violation based on Portfolio's attempt to collect fees previously reversed by U.S. Bank — as "duplicative and moot."

debt while ultimately failing to do so, and the court saw troubling discrepancies in the evidence Portfolio did submit.

The court also found that Terry's second counterclaim — that Portfolio violated the UTPA by seeking to collect fees not expressly authorized by the agreement creating the debt or otherwise permitted by law — also succeeded because of Portfolio's lack of admissible evidence proving the debt's existence. For the two UTPA violations, the court found that Terry was entitled to statutory damages of $1,000.[28]

Terry then moved for full attorney's fees of $100,250 under the UTPA.[29] Portfolio opposed the motion, first arguing that the UTPA did not apply because Terry had failed to prove any ascertainable loss and arguing in the alternative that any award should be reduced by a third because Terry prevailed on only two of her three UTPA-based counterclaims. And if the court declined to apply a percentage-based reduction, Portfolio argued, it should reduce the baseline of hours worked because of other considerations: "Many hours billed by [Terry's attorneys] were not reasonably incurred in pursuit of successful UTPA claims," the requested fee award was "grossly disproportionate" to the damages award, and no court in a similar case had awarded full attorney's fees. In response Terry conceded that the court could deduct fees for work devoted solely to unsuccessful claims, which according to Terry totaled $852.50. The court awarded her the full amount initially requested.

Portfolio appeals the court's decision on the merits, asserting error in the court's evidentiary rulings, its finding for Terry on the collection claim and Terry's UTPA counterclaim, and its application of the UTPA statutory damages provision. It also challenges the court's award of full attorney's fees.

---

[28]  *See* AS 45.50.531(a).

[29]  *See* AS 45.50.537(a).

## III. STANDARD OF REVIEW

"We review a trial court's decision to admit or exclude evidence, including expert witness testimony, for abuse of discretion and will only reverse an erroneous decision if it affected the substantial rights of a party."[30]  Also reviewed for abuse of discretion is a trial court's decision to exclude a late-disclosed witness.[31]  "We will find an abuse of discretion upon a showing that a decision was 'arbitrary, capricious, manifestly unreasonable, or stemmed from improper motive.' "[32]  However, "[w]hen the admissibility of evidence turns on a question of law, such as the correct scope or interpretation of a rule of evidence, we apply our independent judgment."[33]

We review a superior court's ruling on a motion for summary judgment de novo, "adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[34]  We will affirm the grant of summary judgment if, after we have drawn all reasonable inferences in favor of the non-moving party, no genuine issues of fact remain and the moving party is entitled to judgment as a matter of law.[35]

---

[30]     *Cartee v. Cartee*, 239 P.3d 707, 721 (Alaska 2010).

[31]     *See Greene v. Tinker*, 332 P.3d 21, 31, 37-38 (Alaska 2014) (holding that superior court did not abuse discretion in allowing late-disclosed witness to testify).

[32]     *Lindbo v. Colaska, Inc.*, 414 P.3d 646, 651 (Alaska 2018) (quoting *Tracy v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 279 P.3d 613, 616 (Alaska 2012)).

[33]     *Sanders v. State*, 364 P.3d 412, 419-20 (Alaska 2015) (internal quotation marks omitted) (quoting *Barton v. N. Slope Borough Sch. Dist.*, 268 P.3d 346, 350 (Alaska 2012)); *see also id.* at 420 n.21 ("In contrast, when we review a trial court's decision to admit or exclude evidence solely as an application of a correctly interpreted rule of evidence to the facts of the instant case, we apply the abuse of discretion standard of review.").

[34]     *State Farm Mut. Auto. Ins. Co. v. Houle*, 269 P.3d 654, 657 (Alaska 2011) (quoting *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008)).

[35]     *Culliton v. Hope Cmty. Res., Inc.*, 491 P.3d 1088, 1093 (Alaska 2021).

We review all questions of law de novo, including whether a party has standing to bring suit[36] and whether a court correctly interpreted a statute or rule.[37]

"We review an award of attorney's fees for abuse of discretion and will reverse only if the award is arbitrary, capricious, manifestly unreasonable, or stems from improper motive."[38] A trial court "must make sufficient findings to permit meaningful review of an attorney's fees award."[39] While "[a]n absence of explicit findings is not necessarily fatal," the basis for the award must be clear enough to allow appellate review.[40] "[W]hether the trial court, in determining the award of attorney's fees, applied the law correctly is a question of law that we review de novo."[41]

## IV. DISCUSSION

In the discussion that follows we first address the "account stated" cause of action and Portfolio's claim that the courts in *Duvall* and *Terry* abused their discretion by excluding it from trial. We then address several evidentiary issues, including the business records exception to the hearsay rule — relevant to all three cases — and the exclusion of the late-disclosed witness in *Duvall*. Next we describe the

---

[36] *Friends of Willow Lake, Inc. v. State, Dep't of Transp. & Pub. Facilities, Div. of Aviation & Airports*, 280 P.3d 542, 546 (Alaska 2012) ("Issues of standing are questions of law that we review de novo.").

[37] *Guilford v. Weidner Inv. Servs., Inc.*, 522 P.3d 1085, 1093 (Alaska 2023) ("Statutory interpretations are . . . reviewed de novo.").

[38] *Borer v. Eyak Corp.*, 507 P.3d 49, 56 (Alaska 2022) (internal quotation marks omitted) (quoting *Nichols v. State Farm Fire & Cas. Co.*, 6 P.3d 300, 303 (Alaska 2000)).

[39] *State v. Schmidt*, 323 P.3d 647, 668-69 (Alaska 2014) (remanding trial court's award of attorney's fees under Alaska Civil Rule 82 and statute for constitutional claimants because award was too vague to allow appellate review).

[40] *Id.* at 668.

[41] *Glamann v. Kirk*, 29 P.3d 255, 259 (Alaska 2001).

evidence necessary to prove the existence of a valid contract in the debt-collection context.

The UTPA counterclaims involve additional issues common to all three cases: the evidence necessary to prove the counterclaims, the proof of ascertainable loss that will justify an award of statutory damages, and the availability of full attorney's fees to the prevailing consumer. Our ultimate conclusion upon analyzing all these issues is that the superior courts in *Duvall*, *Riddle*, and *Terry* did not err or abuse their discretion in their rulings on procedure, evidence, the merits of the claims, or damages. And we see no abuse of discretion in the attorney's fees award in *Duvall*. We remand the fees award in *Riddle* due to our inability to follow the court's rationale, and we remand the fees award in *Terry* for a minor correction the parties agree should be made. We otherwise affirm the judgments.

### A. It Was Not Error To Preclude An Account Stated Claim At Trial In *Duvall* And *Terry*.

The superior courts in both *Duvall* and *Terry* rejected Portfolio's attempts to assert an account stated cause of action in addition to its claim based on an alleged contract. "An account stated is a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due the creditor."[42] If the creditor submits a statement of account and the debtor fails to object within a reasonable time, the debtor is deemed to have assented to the amount the creditor claims is due.[43] The creditor can then bring an account stated cause of action to collect on the undisputed debt.[44]

---

[42] RESTATEMENT (SECOND) OF CONTRACTS § 282(1) (AM. L. INST. 1981).

[43] *Id.* § 282 cmt. b.

[44] L. S. Tellier, Annotation, *Limitation of Actions as Applied to Account Stated*, 51 A.L.R.2d 331 § 2 (1957).

This doctrine "has its historical origins in accountings between merchants," but some courts have "recognized that the doctrine has been 'extended to embrace every kind of transaction in which the relation of debtor or creditor is involved.' "[45] In the consumer credit card context, the cause of action essentially allows the holder of the debt to submit proof of the final accounting, which is often the last account statement sent to the consumer. If the consumer did not object to the final accounting, it is presumed to be correct for litigation purposes; the holder of the debt does not need not submit proof of the contract that created the debt in the first place.[46] Thus, unlike a claim based on contract, an account stated cause of action "is not founded on the original liability, but is a new agreement between parties to an original account that the statement of the account with the balance struck is correct and that the debtor will pay that amount."[47]

---

[45] *Portfolio Recovery Assocs., LLC v. Sanders*, 462 P.3d 263, 275 (Or. 2020) (en banc) (quoting *Crawford v. Hutchinson*, 65 P. 84, 85 (Or. 1901)).

[46] *See* Turnbull, *supra* note 8, at 342-44.

[47] *Univ. of S. Ala. v. Bracy*, 466 So. 2d 148, 150 (Ala. Civ. App. 1985); *see also Zinn v. Fred R. Bright Co.*, 76 Cal. Rptr. 663, 665-66 (Cal. App. 1969) ("The essential elements of an account stated are: (1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due."); *Portfolio Recovery Assocs., LLC v. Campney*, 892 S.E.2d 321, 327 (S.C. App. 2023) ("The essential elements of an account stated are (1) that the account is actually stated; and (2) that the parties either expressly or impliedly agreed that it is a true statement and is due to be paid then or at some other specified time." (quoting *S. Welding Works, Inc. v. K & S Constr. Co.*, 332 S.E.2d 102, 106 (S.C. App. 1985))).

Alaska has not formally recognized an account stated cause of action, though other states have.[48]  Deciding whether to recognize the cause of action is not necessary to our decision on this appeal.

**1.     The superior court did not err by granting Duvall's motion in limine precluding Portfolio from asserting the account stated cause of action at trial.**

In *Duvall*, Portfolio first argues that the superior court erred when it precluded the account stated theory by granting a motion in limine, which Portfolio contends is an appropriate vehicle for excluding evidence at trial but not for deciding a claim on its merits.  Duvall responds that the court was not ruling on the merits but simply limiting the issues at trial to what had been sufficiently pled.  She argues that we affirmed an analogous ruling in *Superior Fire Protection Co. v. Du Alaska Co., Inc.*[49]

---

[48]     *See, e.g.*, *Pro. Collection Consultants v. Lauron*, 214 Cal. Rptr. 3d 419, 425-26 (Cal. App. 2017) (noting that California law recognizes account stated actions to collect credit card debt); *Cap. One Bank (USA), N.A. v. Denboer*, 791 N.W.2d 264, 275 (Iowa App. 2010) ("[A]ccount stated is a potentially valid claim for creditors seeking to collect a credit card debt in Iowa."); *D & N Lending, LLC v. Tachlis Corp.*, 201 N.Y.S.3d 118, 119 (N.Y. App. Div. 2023) (affirming grant of summary judgment for creditor on account stated claim); *Busch v. Hudson & Keyse, LLC*, 312 S.W.3d 294, 298 (Tex. App. 2010) ("We have previously addressed this issue and held that account stated is a proper cause of action for a credit card collection suit."); *Newgard ex rel. Newgard v. Bank of Am.*, 735 N.W.2d 578, 581-82 (Wis. App. 2007) (allowing account stated cause of action, but limiting it by requiring creditor to provide writings evidencing transactions in credit account).  *But see Cap. One Bank (USA) NA v. Clevenstine*, 7 Pa. D. & C. 5th 153, 157 (Pa. Com. Pl. 2009) ("An account stated is more appropriately pled in a situation in which two equal, sophisticated parties have an ongoing business relationship.  An account stated theory is not appropriate in a credit card account case.").

[49]     772 P.2d 1088, 1089 (Alaska 1989).

The appellant in *Superior Fire Protection* had indicated in its trial brief that it intended to bring another counterclaim and seek additional damages.[50] The opposing party successfully moved in limine to preclude the new claim at trial.[51] On appeal we affirmed the grant of the motion in limine, though we treated it as the denial of a last-minute motion to amend the complaint, an action well within the trial court's discretion.[52]

We take a similar approach here; the superior court would not have abused its discretion had it rejected an amendment to the pleadings to add an account stated claim shortly before trial. The question remains, however, whether an amendment to the pleadings was actually necessary in this case. Alaska is a notice pleading jurisdiction, meaning that "[p]leadings must be liberally construed, with the goal of achieving substantial justice."[53] Under Alaska Civil Rule 8(a), a claim for relief need only "contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks."[54] While a complaint does not need to expressly state a cause of action, "[a] cause of action is [considered] sufficiently pled if it provides the defendant with fair notice of the nature of the claim."[55]

The elements of an account stated cause of action include at least (1) prior dealings between the parties indicating a creditor-debtor relationship, (2) a final accounting of the debt, (3) agreement by the debtor, expressly or impliedly, to the

---

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Sykes v. Melba Creek Mining, Inc.*, 952 P.2d 1164, 1168 n.4 (Alaska 1998).

[54] Alaska R. Civ. P. 8(a).

[55] *Sykes*, 952 P.2d at 1168 n.4.

amount claimed to be due, and (4) the debtor's express or implied agreement to pay that amount.[56] Portfolio's complaint against Duvall was short and to the point. It identified Duvall as "the obligor of a certain credit account" with an identifying account number and said that she had used the card and become "indebted on said account for goods, services, and monies with a current unpaid balance [of] $2,551.06 which is fully due and owing." It said that Portfolio had been assigned the account and was "attempt[ing] to collect a debt." Unmentioned is any final accounting in the form of an account statement separate from the original agreement, or any express or implied agreement by Duvall to pay the amount the final accounting represented as being due.

"[V]ague and non-specific statement[s]" in a complaint do not give the opposing party fair notice of a claim's grounds.[57] This is especially true for causes of action that are unfamiliar in Alaska law and practice.[58] While contract claims are longstanding and widely recognized, an unconventional account stated cause of action cannot easily be teased out of the spare assertions of Portfolio's complaint. It was well within the court's discretion to conclude that it had not been sufficiently pled for purposes of fair notice and therefore could not be pursued at trial absent an amendment to the complaint, which was untimely.

Portfolio also argues, however, that Duvall had fair notice of the account stated claim before trial because the parties had briefed the theory earlier on summary judgment. There is some support in our case law for its position. *Lum v. Koles* involved

---

[56]     *See supra* notes 45-47 and accompanying text.

[57]     *Robinson v. Alaska Hous. Fin. Corp.*, 442 P.3d 763, 770 (Alaska 2019) (holding that claim for "other housing-search interference" was inadequately pled).

[58]     Portfolio notes that we once mentioned an account stated claim 36 years ago in *Foltz-Nelson Architects v. Kobylk*, 749 P.2d 1347, 1349 n.2 (Alaska 1988), where we held in a footnote that the superior court did not abuse its discretion by denying a motion to amend the complaint to add such a claim. Whether it was a valid cause of action under Alaska law was not before us.

claims against police officers for excessive force and warrantless entry.[59] The superior court granted summary judgment to the defendants.[60] We held that summary judgment was proper on the stated claims for unlawful entry in violation of statute and constitutional provisions, but that the court should also have considered claims for trespass and invasion of privacy that the plaintiffs raised for the first time in opposing summary judgment.[61] We reasoned that the newly raised claims "implicate[d] the same privacy concerns arising from the officers' warrantless entry as the [plaintiffs'] other unlawful entry claims, and therefore put the officers on fair notice of the general type of litigation involved."[62]

We note that fair notice depends both on timing and on the nature of the claim sought to be untimely asserted. Portfolio filed suit in 2018 with no mention of an account stated cause of action or the facts necessary to establish it. It first suggested the cause of action over two years later, when, in cross-moving for summary judgment on its collection claim, it asserted that in addition to suing on the credit card agreement it "*may* seek recovery of Duvall's unpaid Account because it is an account stated." (Emphasis added.) The court ruled on the summary judgment motions a month before trial, and Duvall immediately followed up with her motion in limine seeking to preclude an account stated claim at trial. Portfolio had still not sought to add the cause of action to its complaint.

In precluding the claim, the superior court rejected Portfolio's argument that the summary judgment briefing gave Duvall "fair notice that [Portfolio] could seek to recover under that theory at trial." The court reasoned that if Portfolio wanted to pursue a theory of recovery "unrecognized in Alaska," it was required to either plead it

---

[59]     314 P.3d 546, 550-51 (Alaska 2013).

[60]     *Id.* at 552.

[61]     *Id.* at 556-57.

[62]     *Id.* at 557.

or "file a motion for ruling of law to allow [Duvall] an opportunity to fully brief any objections and the court an opportunity to squarely rule on the issue."

We conclude that this was a proper exercise of the court's discretion. The account stated cause of action was not pled in the complaint and it requires proof of elements not included in the complaint's factual allegations. Whether Portfolio would assert it at trial remained equivocal in its summary judgment briefing. And importantly, it is a cause of action not yet recognized in Alaska (unlike the trespass and invasion of privacy claims at issue in *Lum*). We affirm the court's grant of Duvall's motion in limine to exclude evidence of the account stated claim at trial.

**2. The superior court did not err by granting Terry's motion in limine precluding Portfolio from asserting the account stated cause of action at trial.**

The arguments in *Terry* and our analysis of them are almost exactly the same as in *Duvall*. Portfolio argues that deciding this issue on a motion in limine was improper; that an account stated cause of action was sufficiently pled under Alaska's lenient notice pleading standard; that Terry was given timely notice of the cause of action at the summary judgment phase; and that a claim's novelty is not reason enough to prevent a party from pursuing it at trial.

The superior court cited two grounds for granting Terry's motion to exclude the account stated cause of action. First, though "acknowledg[ing] the lenient standard of pleading in Alaska," the court "note[d] with disfavor that [Portfolio], apparently always intending to bring this claim, waited so long to mention [it]." Second, noting that debt-collection claims are "rather common in Alaska," the court observed that the account stated cause of action had yet to be "officially recognized," and the court declined to be the first to do so. The court's explanation is sufficient to show that it reasonably exercised its discretion. The late raising of a novel claim that would change the case's complexion justified the court's decision to exclude it from trial, and we affirm the court's decision in *Terry* for the reasons given above.

**B.** **The Superior Courts Did Not Abuse Their Discretion In Their Evidentiary Rulings.**

**1.** **The superior courts did not err in their application of the business records exception to the hearsay rule.**

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[63] Hearsay is generally inadmissible at trial unless it falls within an express exception or exclusion.[64] One of these is the business records exception for

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge acquired of a regularly conducted business activity, and if it was the regular practice of that business activity to make and keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.[65]

The rationale for this exception comes from the "unusual reliability of business records" when the records' preparer is acting in the ordinary course of business and the business routinely relies on the records.[66]

To fall within the business records exception, a record must satisfy five requirements:

> [F]irst, the record must be of a "regularly conducted business activity"; second, the record must "be regularly kept"; third, the source of information "must be a person who has personal knowledge"; fourth, the information must have

---

[63] Alaska R. Evid. 801(c).

[64] *See* Alaska R. Evid. 801(d) (hearsay exclusions); Alaska R. Evid. 803 (hearsay exceptions); Alaska R. Evid. 804 (same).

[65] Alaska R. Evid. 803(6).

[66] *Wassillie v. State*, 411 P.3d 595, 601 (Alaska 2018) (quoting Alaska R. Evid. 803(6) cmt.).

been "recorded contemporaneously with the event or occurrence"; and fifth, "foundation testimony by the custodian of the record" must be provided.[67]

We have never seriously explored what constitutes "personal knowledge" for purposes of the rule. However, commentary to the rule's federal counterpart suggests that while the witness offered in support of the business record need not have personally created it, she must at least have personal knowledge of the recordkeeping practices of the creating entity.[68]

### a. The superior court in *Duvall* did not err in its application of the business records exception.

Portfolio argues that the superior court in *Duvall* committed legal error by misapplying the business records exception to hearsay, requiring Portfolio's custodian to have "personal knowledge of the creation of the record itself, rather than knowledge of the business's regular recordkeeping practices." Portfolio argues that the touchstone of the business records exception is not where the records originated but whether the custodian has personal knowledge of the recordkeeping practices and whether the document has indicia of trustworthiness, which is presumed when the document is kept in the ordinary course of business. Portfolio asks us to infer the accuracy of the Synchrony Bank documents it sought to admit because of the bank's warranties included in the purchase agreement and Portfolio's subsequent reliance on the bank's

---

[67] *Id.* at 600 (quoting *Noffke v. Perez*, 178 P.3d 1141, 1147 (Alaska 2008)).

[68] 7 MICHAEL H. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 803:6 (9th ed.) ("In laying a foundation establishing that the record offered was made at or near the time by or from information transmitted by a person with first-hand knowledge . . . it is not necessary that the party seeking to introduce the record be able to produce, or even identify, the specific individual upon whose first-hand knowledge the record was based. 'A sufficient foundation for the introduction of such evidence will be laid if the party seeking to introduce the evidence is able to show that it was the regular practice of the activity to base such memorandums, reports, records, or data compilations upon a transmission from a person with knowledge.' " (footnote omitted) (quoting Report of Senate Committee on the Judiciary)).

records in its own business activities. Portfolio also urges us to recognize the adoptive business records doctrine in our application of the hearsay exception.

The superior court in *Duvall* found much of Portfolio's proffered evidence to be inadmissible hearsay because its records custodian lacked sufficient personal knowledge. Portfolio is correct that a witness laying the foundation for a business record need not be the person who created it, but the witness must still have knowledge of the recordkeeping practices employed to create and maintain the record.[69] Thus, if the superior court had discredited Dreano's testimony solely because she was not a bank employee, or solely because she personally did not create the bank's records, that may have been error. But that is not what the court did. Rather, it found repeatedly that Dreano lacked the requisite knowledge of Synchrony Bank's routine recordkeeping practices or that her testimony lacked reliability. It did not abuse its discretion when it consequently excluded the evidence.

Relying on the adoptive business records doctrine, Portfolio argues that Synchrony Bank's records became Portfolio's records for purposes of the business records exception.[70] Portfolio argues that this was proven by Dreano's testimony that (1) she had personal knowledge of Portfolio's recordkeeping practices; (2) Portfolio's "own records [were] made by an individual with knowledge"; and (3) Synchrony Bank's records had "been incorporated and integrated" into Portfolio's records "in the ordinary course of" Portfolio's debt-collection business. But assuming for purposes of argument that our law recognizes the adoptive business records doctrine, we still find no abuse of discretion in the superior court's exclusion of the Synchrony Bank records.

The superior court accepted the adoptive business records doctrine for purposes of analysis in its post-trial evidentiary ruling, framing it in this way:

---

[69] *Id.*

[70] *See supra* note 9.

> A proponent of evidence in the form of business records from a third party that the proponent has integrated into its own records may move to admit those records without a witness personally familiar with the creation of the records when the witness through whom the records are to be admitted testified that: (1) The records are relied upon by the integrating business in its regular course of business; and (2) the witness provides sufficient additional indicia of trustworthiness or reliability such that reasonable doubts regarding the accuracy of the records are removed.

The court declined to admit Portfolio's proffered Synchrony Bank records under this articulation of the doctrine. The court explained that the "indicia of trustworthiness or reliability" necessary to establish step two of the analysis could include "testimony indicating familiarity with the recordkeeping practices" of the record's original creator "or testimony establishing a sufficiently close business relationship between the business that created the records and the one that incorporated them such that it was reasonable for the incorporating business to rely on the records." But it found that Dreano had not provided such testimony. Although she testified that Portfolio "has had an existing relationship with Synchrony for many, many years," she confirmed that she had no personal knowledge of the bank's recordkeeping practices.

The superior court's finding that Dreano's testimony did not provide the necessary indicia of trustworthiness or reliability is essentially a credibility determination. We defer to the credibility assessments of a trial court, which is in a better position than we are to gauge the subtleties of live witness testimony.[71] We see

---

[71]     *See Hannah B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 289 P.3d 924, 930 (Alaska 2012) ("We defer to a superior court's credibility determinations, particularly when they are based on oral testimony."). Other courts have found that it is very difficult for a debt buyer to establish the foundation for the original creditor's business records. *See Midland Funding LLC v. Valentin*, 966 N.Y.S.2d 656, 659 (Nassau Dist. Ct. 2013) ("A witness from an assignee such as

no abuse of discretion in the court's decision not to admit the Synchrony Bank records under the business records exception to the hearsay rule.

> **b.** **The superior court did not err in its application of the business records exception to exclude evidence in *Terry*.**

Many of Portfolio's arguments in *Terry* are the same as those made in *Duvall*. Unique to *Terry*, however, Portfolio argues that the court erred by discrediting both of its two foundational witnesses: Dreano, Portfolio's records custodian, and Katey Redell, a litigation manager at U.S. Bank, the original owner of Terry's credit card account. Portfolio argues that the excluded documents were properly authenticated by these two witnesses and were not inadmissible hearsay.

Our analysis of this issue is nearly identical to that above in *Duvall*, though the superior court in *Terry* decided that the documentary evidence was inadmissible even with the testimony of an employee of the records' creator, U.S. Bank. The court found that neither Dreano nor Redell, the bank employee, had the knowledge required to either authenticate the documents or bring them within the exception to the hearsay rule, and we agree with its conclusion.

Authenticating witnesses must have knowledge of the recordkeeping practices employed to create the record at issue in order to lay the foundation for its admission under the business records exception.[72] The superior court found that Dreano

---

Midland almost always lacks the requisite knowledge to lay the proper foundation to establish [that] the documents, the credit card agreement and the credit card statement, are business records of the original creditor.").

[72] Alaska R. Evid. 803(6) (providing for admission of documentation "made at or near the time by, or from information transmitted by, a person with knowledge acquired of a regularly conducted business activity, and if it was the regular practice of that business activity to make and keep the memorandum, report, record, or data compilation, *all as shown by the testimony of the custodian or other qualified witness*, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness" (emphasis added)); *United States v. Ray*, 930 F.2d 1368, 1370

"failed to express both a familiarity with the disputed records, and the process for maintaining them." Much of the disputed evidence — the bill of sale, the cardmember agreements, the account statements, the sale notification letter from U.S. Bank to Terry, and the purchase agreement — consisted of documents created by U.S. Bank and passed on to Portfolio at the time of sale. The court held that Dreano, who had never worked for or communicated directly with U.S. Bank about its recordkeeping practices, lacked the personal knowledge necessary to authenticate the documents. With regard to Redell, the bank employee, the court found that she also lacked the necessary personal knowledge of how the records were created and maintained. Also relevant to the court's conclusion about Redell were its findings that she could not testify about the bank's practices in 2016 when Terry's account was opened; that she was not involved in any of the transactions that produced the documents; and that she lacked knowledge of the bank's digital document maintenance and storage systems.

The court's findings have solid support in the record. At trial, neither witness could speak in depth about the recordkeeping practices of either company. Only two exhibits — the load data and letters from Portfolio to Terry — were created by Portfolio. Dreano testified that the load data was excerpted from the sale file provided by U.S. Bank when Portfolio purchased Terry's account, but she could not testify about how the file was created. Regarding the U.S. Bank documents, Dreano testified that she had received a single afternoon's training from the bank. She had no other information about the bank documents' creation.

Redell's testimony confirmed in a general way that the exhibits she was asked about complied with the requirements of Evidence Rule 803(6): i.e., they documented a regular business activity, were regularly kept in the course of business,

---

(9th Cir. 1990) ("The phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system." (citing *United States v. Franco*, 874 F.2d 1136, 1139-40 (7th Cir. 1989))).

recorded events contemporaneously with their occurrence, and were relied on by U.S. Bank in the course of its operations. She also testified, however, that she was only "generally familiar" with the debt sales process, did not create documents herself, did not know who created Terry's sales file or what steps were followed to create it, and did not know the specific steps taken by employees who did generate such documents.

Because this evidence supports the court's findings about Dreano's and Redell's ability to authenticate the disputed records and to satisfy the requirements of the business records exception, we conclude that the court did not abuse its discretion when it refused to admit the exhibits for their truth due to the witnesses' lack of knowledge.

### 2. The superior court did not abuse its discretion by excluding Portfolio's late-disclosed witness in *Duvall*.

Portfolio filed a supplemental witness list in *Duvall* two months past the deadline for lay witness depositions and less than a month before trial. The list identified a previously undisclosed witness: Eilum, the Synchrony Bank managerial employee. In response to Duvall's motion to exclude her testimony at trial, Portfolio explained that it was responding to the court's ruling on the parties' cross-motions for summary judgment, which indicated for the first time that Portfolio would need to produce a Synchrony Bank employee with direct knowledge of the bank's records before those records could be admitted under the Evidence Rule 803(6) exception to hearsay. Because of the late disclosure, however, the court granted Duvall's motion and excluded Eilum's testimony.

Portfolio challenges this ruling. It contends that the court erred by accepting Duvall's "vastly overstated" claims of prejudice, because Duvall should have anticipated that Portfolio "would seek to offer a custodial witness in support of certain Synchrony Bank records." It also contends that the court abused its discretion by failing to consider less onerous sanctions for the late disclosure, such as "the possibility of a pretrial deposition or other pretrial discovery."

Alaska Civil Rule 37 governs sanctions and other possible responses to a party's failure to make disclosures or to cooperate in discovery. Rule 37(c) addresses failures to comply with Alaska Civil Rule 26 "without substantial justification." Rule 26 mandates certain pretrial disclosures; these include "the name and, if not previously provided, the address and telephone number of each witness, separately identifying those whom the party expects to present and those whom the party may call if the need arises."[73] Rule 26(a)(3) specifies that "[t]hese disclosures shall be made at the times and in the sequence directed by the court," and there is a continuing duty to supplement them whenever new information comes to light.[74] Under Rule 37(c)(1) a party "that without substantial justification fails to disclose information required by Rules 26(a) [or] 26(e)(1) . . . shall not, unless such failure is harmless, be permitted to use as evidence at a trial . . . any witness or information not so disclosed."[75]

Rule 37(c)(1) does give the court the discretion to impose sanctions other than or in addition to exclusion. These may include "requiring payment of reasonable expenses, including attorney's fees, caused by the failure [to disclose]" and "informing the jury of the failure to make the disclosure." By reference to Rule 37(b)(2)(A)-(C), Rule 37(c)(1) incorporates other possible sanctions as well, such as an order that certain matters "shall be taken to be established for the purposes of the action"; "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence"; and "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed," or even dismissing the action or entering a default judgment "against the disobedient party." But notwithstanding this range of available sanctions

---

[73] Alaska R. Civ. P. 26(a)(3)(A).

[74] Alaska R. Civ. P. 26(e)(1).

[75] Alaska R. Civ. P. 37(c)(1).

— and the trial courts' discretion to choose among them[76] — we have recognized that "Rule 37(c)(1) makes exclusion of testimony the presumptive rule when evidence is not disclosed as required."[77]

In ruling on Duvall's motion to exclude Eilum's testimony, the superior court had to decide first whether Portfolio's failure to timely disclose was "without substantial justification" and then whether the failure was harmless.[78] The court considered and rejected Portfolio's argument that it had only just been alerted to the need for a Synchrony Bank witness to authenticate the bank's records: Portfolio "was on notice that the court would have to make a factual finding regarding the reliability of any such records before they could be admitted," and Portfolio "knew that [Duvall] dispute[d] the reliability of Synchrony's records and there would be a possibility that the court would require the testimony of a person with first-hand knowledge of the records' creation to resolve that dispute." The court further observed that Portfolio could not reasonably have relied on the adoptive business records doctrine because Alaska's courts had yet to recognize it. There was thus no substantial justification for the disclosure's untimeliness.

---

[76] *See Adkins v. Collens*, 444 P.3d 187, 201 (Alaska 2019) ("Trial courts generally have discretion to determine the appropriate sanction for the violation of a discovery order, but this discretion is limited when the sanction's effect 'is to impose liability on the offending party, establish the outcome of or preclude evidence on a central issue, or end the litigation entirely.' " (quoting *Khalsa v. Chose*, 261 P.3d 367, 372 (Alaska 2011))).

[77] *Id.* (affirming exclusion of two expert witnesses when party failed to disclose their reports before pretrial deadline).

[78] Alaska R. Civ. P. 37(c)(1).

The court then turned to the question of harm, considering whether allowing the late disclosure would materially prejudice Duvall.[79] The court concluded that either Duvall would "be forced to discover on cross-examination at trial whether Ms. Eilum can lay the proper foundation to admit the Synchrony records pursuant to [Evidence Rule] 803(6), or the trial for this [three-year-old] case would have to be substantially delayed to allow [Duvall] time to depose [Portfolio's] newly-identified witness due to the court's schedule."[80]

The superior court's conclusions that Portfolio lacked substantial justification for the late disclosure and that Duvall would be prejudiced if Eilum were allowed to testify are both reasonable conclusions, supported by the record. Given that the presumptive response under Civil Rule 37(c)(1) in these circumstances is exclusion of the late-disclosed witness, we see no abuse of discretion in the court's ruling.[81]

---

[79] Although the superior court analyzed the prejudice caused by Portfolio's late disclosure, it appeared to believe that the issue was irrelevant once it had concluded that the late disclosure was without good cause. But Rule 37(c)(1) conditions the exclusion sanction on findings both that there was no "substantial justification" for the failure to timely disclose *and* that "such failure [was not] harmless." The court was correct to analyze the prejudice issue.

[80] The superior court's calendaring challenges are not in our record, but we necessarily defer to its perception of the state of the litigation just a month before the scheduled trial. *See Judd v. Burns*, 397 P.3d 331, 339 (Alaska 2017) ("Subject to the constitutional rights of the litigants, the trial court plainly retains discretionary control of its own calendar, and an appellate court will rightly hesitate to disturb the trial court's rulings on such matters, unless it is clearly shown that this discretion was manifestly abused." (quoting 75 AM. JUR. 2D *Trial* § 20 (2017))).

[81] We reject Portfolio's implication that a court considering a violation under Rule 37(c)(1) is required to weigh the factors listed in Rule 37(b)(3) — such as the willfulness of the conduct and whether a lesser sanction would adequately protect the opposing party — before excluding the late-disclosed evidence. The Rule 37(b)(3) factors apply to sanctions "under sections (A), (B), or (C) of subparagraph (b)(2)." A court considering a disclosure violation under Rule 37(c)(1) *may* consider such

## C. The Superior Courts Did Not Err In Their Rulings On Portfolio's Contract Claims.

Portfolio's debt-collection actions are essentially contract claims.[82] Credit card transactions typically involve multiple contracts: "the sales agreement between consumer and merchant, the credit card agreement between consumer and issuer, the merchant agreement between merchant and merchant bank[,] . . . and the interchange agreement among banks."[83] In Portfolio's cases, the contracts it is seeking to enforce are the credit card agreements between the consumers and the issuers, Portfolio's alleged predecessors in interest. Like any Alaska plaintiff seeking to enforce a contract, Portfolio, as the assignee of an original contracting party's rights, "must show: an offer encompassing all essential terms, unequivocal acceptance by the offeree, consideration, and an intent to be bound. To be enforceable a contract must also have reasonably definite and certain terms."[84]

There is no controlling Alaska case law addressing the necessary proof in debt-collection cases. Other jurisdictions, however, have ruled consistently. In a case involving Portfolio, the Texas Court of Appeals explained that when Portfolio brings a breach-of-contract claim, it must "establish that [the consumer] had an obligation — in

---

sanctions "[i]n addition to or in lieu of" exclusion, but exclusion is the presumptive remedy for a failure to disclose "without substantial justification . . . unless such failure is harmless." *Adkins*, 444 P.3d at 201. A court does not abuse its discretion by imposing that remedy when the rule's preconditions are met.

[82] *See Hudson v. Citibank (S.D.) NA*, 387 P.3d 42, 51 (Alaska 2016) ("The bank's claim for recovery of the debt would center on the language of the contract and the breach of the cardholder's duty to pay.").

[83] *Alaska Travel Specialists, Inc. v. First Nat'l Bank of Anchorage*, 919 P.2d 759, 762 (Alaska 1996).

[84] *Young v. Kelly*, 334 P.3d 153, 157 (Alaska 2014) (internal quotation marks omitted) (first quoting *Magill v. Nelbro Packing Co.*, 43 P.3d 140, 142 (Alaska 2001); and then quoting *Madonna v. Tamarack Air, Ltd.*, 298 P.3d 875, 879 (Alaska 2013)).

this case, the obligation to pay a debt — specifically to Portfolio[]."[85] Even when it is clear that *some* agreement must have existed to create the debt, generic evidence "is not sufficient to establish the terms of a valid contract as a matter of law."[86] The court must be presented with the original agreement before enforcing the contract;[87] a sample card agreement purportedly governing accounts at the time of charge-off is no substitute for what the parties originally agreed to be the governing contract.[88]

Courts do enforce "unsigned service contracts — including credit card contracts — where the contract is sent to a recipient who thereafter demonstrates his or her assent to its terms by using the service provided," but this usually occurs when the original contract is in evidence along with proof that it was provided to the consumer.[89]

---

[85] *Kenny v. Portfolio Recovery Assocs., LLC*, 464 S.W.3d 29, 33 (Tex. App. 2015).

[86] *Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 236 (Tex. App. 2008).

[87] *See Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1331 (11th Cir. 2016) ("As plaintiff pointed out during oral argument, the forms of such [credit card] agreements change frequently, often in response to changes in the substantive law. There is no way of knowing whether the arbitration language contained in the form of the agreement attached to [an employee's] declaration, or any relevant variant of it, appeared in the form allegedly mailed to [the consumer]. Accordingly, [the debt collector] did not meet its burden of proving that plaintiff assented to the 'essential terms of the contract' for the simple reason that the terms of exactly what, if anything, [the consumer] agreed to when she applied for the credit card are unknown.").

[88] *Danley v. Encore Cap. Grp., Inc.*, No. 15-CV-11535, 2015 WL 7733450, at *1, *3 (E.D. Mich. Dec. 1, 2015); *UNIFUND, CCR, LLC v. Elyse*, 382 P.3d 1090, 1093 (Wash. App. 2016) ("The only written contract Unifund proffered was the 2010 cardmember agreement. But Unifund failed to prove that Elyse assented to that agreement . . . [even] by her conduct since her credit card was last used in July 2008 and the last payment was made on the card in November 2009."); *Williams*, 264 S.W.3d at 236 ("The material terms of a contract must be agreed upon before a court can enforce the contract, and the interest rate is a material term.").

[89] *Bazemore*, 827 F.3d at 1332.

Other courts have held that debt collectors do not have to submit *every* version of a credit card agreement, but it is only after the original contract has been established that a debt collector can rely on "assent by conduct in the form of continuing use of a credit card [to prove] assent to the version of the card agreement in existence at the time of the card's most recent use."[90]

That the debt has been assigned also requires specific proof. "It is the assignee's burden to prove the assignment," and because "courts are reluctant to credit a naked conclusory affidavit on a matter exclusively within a moving party's knowledge, an assignee must tender proof of assignment of a particular account or, if there [was] an oral assignment, evidence of consideration paid and delivery of the assignment."[91] "In cases that involve multiple assignments, there must be proof of the validity of assignment every time the rights to collect the debt are transferred."[92] The

---

[90] *Elyse*, 382 P.3d at 1093.

[91] *Citibank (S.D.), N.A. v. Martin*, 807 N.Y.S.2d 284, 291 (N.Y Civ. Ct. York County 2005) (citations omitted); *see also CACH, LLC v. Askew*, 358 S.W.3d 58, 61-62 (Mo. 2012) (en banc) ("In cases that involve a party attempting to recover on an account owed to some other party, 'proof of an assignment of the account is essential to a recovery.' The party must show clearly through a valid assignment it is the rightful owner of the account at issue." (first quoting *Midwestern Health Mgmt., Inc. v. Walker*, 208 S.W.3d 295, 298 (Mo. App. 2006); and then citing *C&W Asset Acquisition, LLC v. Somogyi*, 136 S.W. 3d 134, 140 (Mo. App. 2004))).

[92] *Askew*, 358 S.W.3d at 62; *see also Gemini Cap. Grp., LLC v. Jones*, 904 N.W.2d 131, 137 (Wis. App. 2017) ("[I]n order to make a prima facie showing that it is the owner of Jones' debt, Gemini must present evidence indicating that it owns that specific debt. Gemini must present evidence showing that Jones' specific debt was transferred from HSBC to Santander, from Santander to Main Street, and finally from Main Street to Gemini." (emphasis omitted)).

documents must show which accounts were transferred and specifically include the account of the relevant consumer.[93]

Following the weight of legal authority, we conclude that in order to succeed on its contract claims to collect the debts in the three cases before us now, Portfolio was required to show both (1) the material terms of the contract in effect between the consumer and the original card issuer at the time the debt was incurred, and (2) a chain of title sufficiently complete to demonstrate the assignment of the debt to Portfolio.

### 1. The superior court did not err by finding for Duvall on Portfolio's contract claim.

After the bench trial in *Duvall*, the superior court held that Portfolio had failed to prove its contract claim by admissible evidence. Only three exhibits had been admitted without limitation: the purchase agreement, the bill of sale, and Duvall's bank records. The court held that while Portfolio established its ownership of Duvall's debt, it failed to prove that Duvall owed the claimed amount to Synchrony Bank at the time Portfolio purchased the debt. The court concluded: "For this reason alone, [Portfolio's] claim fails."

Portfolio argues that this decision was the result of several errors: (1) the grant of Duvall's motion in limine precluding Portfolio's account stated cause of action; (2) the exclusion of the late-disclosed Synchrony Bank employee, Eilum, from testifying at trial; and (3) the exclusion of critical documentary evidence through the mistaken application of the business records exception to the hearsay rule. We have rejected each of these arguments above.[94]

---

[93] *Kenny v. Portfolio Recovery Assocs., LLC*, 464 S.W.3d 29, 33-34 (Tex. App. 2015); *Gemini Cap. Grp., LLC v. Tripp*, 445 S.W.3d 583, 588 (Mo. App. 2013); *Premier Cap., L.L.C. v. Baker*, 972 N.E.2d 1125, 1134 (Ohio App. 2012).

[94] *See supra* Part IV A.1 (motion in limine), IV.B.1.a (business records exception), IV.B.2 (late-disclosed witness).

The question remains whether the court erred by finding for Duvall based on the evidence that *was* admitted. But none of the admitted evidence identified Duvall's account, either by name or by account number. It is only the load data — excerpted from the original sale file received from Synchrony Bank — that contains the alleged details of Duvall's assigned account; but as explained above, the court properly admitted this hearsay document only as evidence that Portfolio had purchased Duvall's account, not for the truth of the amount it claimed was owing. We agree with the superior court's conclusion that Portfolio could not collect on the debt without this essential element of its claim.

### 2. The superior court did not err by granting summary judgment for Riddle on Portfolio's contract claim.

The superior court granted Riddle's motion for summary judgment on Portfolio's contract claim on the ground that Portfolio could not demonstrate a clear chain of title to Riddle's account and therefore lacked standing to bring the suit. The court explained that "the basic requirement to satisfy standing in Alaska is adversity, so [Portfolio] must prove it actually owns the debt in question, which is accomplished through demonstrating a clear and complete chain of title to the debt from the original creditor, Citibank, to [Portfolio]." The court concluded that it was not sufficient for the assignee to rely "on bills of sale or affidavits that show a bulk purchase of debts without demonstrating ownership of the specific account in question."

Portfolio argues that its "properly authenticated evidence was sufficient to create [at minimum] a triable issue of fact as to Citibank's assignment of Riddle's account to [Portfolio]." It argues that the court erred in excluding evidence that Portfolio properly authenticated as its business records, and that as a result of these rulings the court improperly found that Portfolio lacked standing. Portfolio also argues that the court erred by disregarding admissible evidence that established valid assignment of Riddle's debt.

"Summary judgment is granted if the pleadings, depositions, or other admissible evidence along with affidavits show that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law."[95] The moving party has the burden to prove, through admissible evidence, that there are no genuine issues of material fact.[96] Only if the movant satisfies this burden is the non-moving party required to "demonstrate that a genuine issue of fact exists to be litigated by showing that it can produce admissible evidence reasonably tending to dispute the movant's evidence."[97] The non-movant must "set forth specific facts showing that admissible evidence could be produced that reasonably tends to dispute or contradict the moving party's evidence in order to demonstrate the existence of a dispute of material fact."[98]

Motions for summary judgment typically follow discovery. The discovery rules require each party to disclose certain information to the other, including "the factual basis of each of its claims or defenses,"[99] the identity of individuals "likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings,"[100] and copies or descriptions of "all documents, electronically stored information, data compilations, and tangible things that are relevant to disputed facts alleged with particularity in the pleadings,"[101] regardless of whether such information

---

[95]     *Greywolf v. Carroll*, 151 P.3d 1234, 1240 (Alaska 2007).

[96]     *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 517 (Alaska 2014) (quoting *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 760 n.25 (Alaska 2008)).

[97]     *Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211, 1215 (Alaska 1991).

[98]     *Greywolf*, 151 P.3d at 1241.

[99]     Alaska R. Civ. P. 26(a)(1)(A).

[100]    Alaska R. Civ. P. 26(a)(1)(B).

[101]    Alaska R. Civ. P. 26(a)(1)(D).

has been requested by the other side.[102] "The opportunity to discover facts relevant to an opponent's claims and defenses is especially important at the summary judgment stage."[103] Alaska Civil Rule 56(f) recognizes that if a party opposing summary judgment cannot yet present facts to counter the movant's assertions, "the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."[104] This rule safeguards "against an improvident or premature grant of summary judgment."[105] Motions under Rule 56(f) should be liberally granted, as long as the moving party "provides adequate reasons explaining why the party cannot produce facts necessary to oppose summary judgment within the original time frame."[106]

Both Riddle and Portfolio submitted affidavits and documentary evidence in support of their positions on summary judgment.[107] As explained above, the court did not abuse its discretion in its evidentiary rulings, correctly applying Evidence Rule 803(6) to hold that the proffered cardmember agreement, account statements, and load data were inadmissible hearsay.[108] Portfolio also proffered two affidavits of debt, which

---

[102]    Alaska R. Civ. P. 26(a)(1).

[103]    *McCormick v. Chippewa, Inc.*, 330 P.3d 345, 351 (Alaska 2014).

[104]    Alaska R. Civ. P. 56(f).

[105]    *McCormick*, 330 P.3d at 351 (quoting *Munn v. Bristol Bay Hous. Auth.*, 777 P.2d 188, 193 (Alaska 1989)).

[106]    *Id.* at 352 (quoting *Gamble v. Northstore P'ship*, 907 P.2d 477, 485 (Alaska 1995)).

[107]    Alaska R. Civ. P. 56(c) ("Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.").

[108]    *See supra* Part IV.B.1 for further explanation of Rule 803(6) and requirements to admit evidence under this exception.

the court properly excluded under the plain language of Civil Rule 56(e) because they referred to records that had not been submitted along with them.[109] Only the bill of sale, the purchase agreement, and correspondence from Portfolio to Riddle were admitted, along with Portfolio's discovery responses.

Considering the admitted evidence, the superior court did not err by granting summary judgment in Riddle's favor. Portfolio could not prove the material terms of the governing contract because it lacked the original cardmember agreement. Nor could it prove that it owned the debt it was attempting to collect, as there was no evidence in the record establishing that its bulk purchase of debt from Citibank included Riddle's account. There was thus "[a] complete failure of proof concerning [two] essential element[s] of the nonmoving party's case"[110] — both a meeting of the minds on contract terms and the ownership of the resulting debt — and Riddle was entitled to summary judgment.

Nor did the court err by framing its decision in terms of Portfolio's standing to sue. The "basic requirement of standing is adversity of interests."[111] "A party satisfies the adversity requirement when the party has a sufficient personal stake in the outcome of the controversy and an interest which is adversely affected by the complained-of conduct."[112] To demonstrate a sufficient personal stake in this context,

---

[109]     Alaska R. Civ. P. 56(e) ("Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.").

[110]     *Greywolf v. Carroll*, 151 P.3d 1234, 1241 (Alaska 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[111]     *Law Project for Psychiatric Rts., Inc. v. State*, 239 P.3d 1252, 1255 (Alaska 2010).

[112]     *Native Vill. of Chignik Lagoon v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 518 P.3d 708, 717 (Alaska 2022) (internal quotation marks omitted) (quoting *Dapo v. State, Dep't of Health & Soc. Servs.*, 509 P.3d 376, 381 (Alaska 2022)).

Portfolio had to prove it owned the debt it was attempting to collect.[113] The admitted evidence did not specifically identify Riddle's account as being among those Portfolio purchased in bulk from Citibank. Unable to prove that it owned Riddle's debt, Portfolio could not show the adversity necessary to establish standing to sue on that debt.

### 3. The superior court did not err by finding for Terry on Portfolio's contract claim.

The superior court in *Terry* rejected Portfolio's contract claim following trial. The court found that the admitted evidence failed to establish the elements of a contract and its reasonably definite and certain terms. The court also found that the evidence did not establish a complete chain of title.

The court did not clearly err in these findings. Portfolio's arguments in *Terry* generally follow those it relies on in *Duvall* and *Riddle*; that is, that the court erred in its evidentiary rulings. Because we have affirmed those rulings, as explained above,[114] Portfolio cannot succeed on its contract claim in *Terry* either.

### D. The Superior Courts Did Not Err In Their Rulings On The Consumer's UTPA Counterclaims.

In enacting the UTPA, the Alaska Legislature declared that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are . . . unlawful."[115] The UTPA is the state counterpart of the FDCPA,[116] the federal statute which prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt."[117] Our cases establish

---

[113] *See, e.g., New Century Fin. Servs., Inc. v. Oughla*, 98 A.3d 583, 591 (N.J. App. 2014) ("We agree . . . that plaintiffs must prove that they own the charged-off credit card debts on which they sue, whether one characterizes it as standing to sue or an essential element of proof on an assigned claim.").

[114] *See supra* Part IV.B.1.

[115] AS 45.50.471(a).

[116] *Pepper v. Routh Crabtree, APC*, 219 P.3d 1017, 1023 (Alaska 2009).

[117] 15 U.S.C. § 1692f.

that "a violation of the FDCPA is inescapably an 'unfair or deceptive act[ ] or practice[ ]' under AS 45.50.471(a)."[118]  "As a general matter, a prima facie case of unfair or deceptive acts or practices under the UTPA requires proof of two elements: '(1) that the defendant is engaged in trade or commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred.' "[119]  Portfolio does not dispute that it "is engaged in trade or commerce"; our focus is therefore on whether it committed an unfair act or practice as alleged in the consumers' counterclaims.

### 1. First UTPA counterclaim:  seeking to collect fees and charges "not expressly authorized"

Each of the three consumers brought a counterclaim alleging that Portfolio violated the UTPA by "seeking to collect fees and charges . . . which are not expressly authorized by the agreement creating the debt or permitted by law."[120]  They base the counterclaim on the FDCPA, 15 U.S.C. 1692f(1), which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."[121]

We have not considered this claim before, but other jurisdictions are aligned on the evidence required to prove it.  A helpful case from the Ninth Circuit is *McCollough v. Johnson, Rodenburg & Lauinger, LLC*,[122] on which the superior courts in both *Duvall* and *Terry* relied.  The consumer in *McCollough* sued Johnson,

---

[118]   *Alaska Tr., LLC v. Ambridge*, 372 P.3d 207, 226 (Alaska 2016) (alterations in original).

[119]   *Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1255 (Alaska 2007) (quoting *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 534 (Alaska 1980)).

[120]   Riddle voluntarily dismissed this counterclaim.

[121]   15 U.S.C. § 1692f(1).

[122]   *McCoullough v. Johnson, Rodenberg & Lauinger, LLC* (*McCollough II*), 637 F.3d 939 (9th Cir. 2011).

Rodenburg & Lauinger (JRL), a debt collector, for alleged violations of the FDCPA and Montana's version of the UTPA.[123] One of the alleged violations was "seeking collection costs and attorney fees not allowed by law" because JRL had no written contract expressly providing for such incidental charges.[124] The parties cross-moved for summary judgment.[125] McCollough "presented JRL's own files, and testimony from JRL employees," as "evidence that JRL had no contract allowing attorneys fees against McCollough — or even any specific information from its client that there was such a contract in existence."[126]

This shifted the burden to JRL to show specific facts creating a genuine issue for trial.[127] But the trial court found that JRL failed to carry its burden.[128] Although JRL offered an unauthenticated cardmember agreement that postdated the last payment on McCollough's account, the court concluded that "[e]ven if this were the applicable agreement, the Court cannot rely on unauthenticated evidence."[129] It therefore held that JRL violated the FDCPA, and it granted McCollough's motion for summary judgment on the claim.[130]

JRL appealed to the Ninth Circuit Court of Appeals, where it argued that even without McCollough's specific cardmember agreement it had "presented evidence that attorney's fees are permitted under *all* cardmember agreements," which should be

---

[123] *Id.* at 947.

[124] *McCollough v. Johnson, Rodenberg & Lauinger* (*McCollough I*), 587 F. Supp. 2d 1170, 1174 (D. Mont. 2008), *aff'd sub nom. McCollough II*, 637 F.3d 939.

[125] *McCollough II*, 637 F.3d at 947.

[126] *McCollough I*, 587 F. Supp. 2d at 1179.

[127] *Id.*

[128] *Id.*

[129] *Id.*

[130] *Id.*

enough at least to survive summary judgment and bring the issue to a jury.[131] The Ninth Circuit disagreed, holding that "the presentation of generic evidence that all credit card[member agreements] contain attorney's fees provisions was insufficient to create a genuine issue of material fact for the jury."[132] Other jurisdictions agree with this analysis and result.[133]

> **a. The superior court did not err by granting summary judgment for Duvall on the "unauthorized fees and charges" counterclaim.**

In granting Duvall's motion for summary judgment on this UTPA counterclaim, the court explained that "despite extensive discovery and the filing of cross-motions for summary judgment, there is still no evidence of the original credit card agreement." Portfolio argues that this was error: that the court "improperly shift[ed] the burden at summary judgment from Duvall to [Portfolio]" by requiring Portfolio to produce this evidence in response to Duvall's motion.

It is true that Duvall, as the moving party, had the burden to prove the absence of genuine issues of material fact in order to prevail on summary judgment.[134]

---

[131] *McCollough II*, 637 F.3d 939, 950 (9th Cir. 2011) (emphasis in original).

[132] *Id.*

[133] *See, e.g.*, *Reynolds v. EOS CCA, U.S. Asset Mgmt., Inc.*, No. 1:14-cv-01868-JMS-DML, 2016 WL 1639120, at *6 (S.D. Ind. Apr. 26, 2016) ("A simple and plain reading of the statute requires an explicit agreement authorizing the amounts [of interest and fees] Defendants attempted to collect in the April 4, 2014 letter." (citing 15 U.S.C. § 1692f(1))); *In re Maxwell*, 281 B.R. 101, 119 (Bankr. D. Mass. 2002) ("Because [the debt collector] did not have possession of the Note, it could not ascertain whether it was entitled to demand such interest. Accordingly, it attempted to collect interest without the express authorization of the agreement creating the debt in violation of 15 U.S.C. § 1692f(1)."); *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 996 (7th Cir. 2003) (holding, in relevant part, that whether debt-collection violated § 1692f(1) depends on "whether the debt agreement explicitly authorizes the charge").

[134] *Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211, 1215 (Alaska 1991).

Her motion was accompanied by a declaration that attached several exhibits, including the deposition of Portfolio's Alaska Civil Rule 30(b)(6) designee,[135] Portfolio's supplemental responses to discovery, the load data allegedly related to Duvall's account, a monthly statement of her account with a 2017 closing date, and an undated cardmember agreement that had been produced by Portfolio. Portfolio argues that this showing was insufficient to shift the burden, because Duvall "offered exactly no evidence that the total amount of her [a]ccount included any improper or unauthorized fees or charges."

But what the consumer needs to show in order to succeed on this UTPA counterclaim is not that the incidental charges are improper, but only that they are not "expressly authorized by the agreement creating the debt or permitted by law."[136] Of course, because the burden of proving a UTPA violation is on the consumer asserting it,[137] demonstrating the lack of any such express authorization is initially the consumer's burden. But the debt collector's failure to produce the authorizing

---

[135] Pursuant to Rule 30(b)(6), a party wishing to depose a corporation or other organization must describe in the deposition notice "with reasonable particularity the matters on which examination is requested"; the organization must then designate a person to "testify as to matters known or reasonably available to the organization."

[136] 15 U.S.C. § 1692f(1).

[137] *See Sloan v. Jefferson*, 758 P.2d 81, 83 (Alaska 1988) ("The party asserting a fact generally bears the burden of proving that fact. This is particularly true when the party asserting a fact controls the evidence which bears upon that fact." (citations omitted)). The consumers cite *Evankavitch v. Green Tree Servicing, LCC*, 793 F.3d 355, 361-67 (3rd Cir. 2015), for the proposition that "[i]n FDCPA cases, the burden is always *on the debt collector* to establish the validity of the underlying debt." (Emphasis in original.) But the debt collector in *Evankavitch* was seeking the protection of an exception to the FDCPA that allowed it to contact third parties about the debt, and the court applied the rule that "a party seeking shelter in an exception to a statute has the burden of proving it." *Id.* at 360, 367. The rule does not apply here.

agreement during discovery is itself evidence on which the consumer may rely in order to shift the burden on summary judgment to the debt collector.

Once the burden has shifted, the debt collector must demonstrate that the incidental charges *are* expressly authorized. Assuming that the debt collector filed suit without having that authorization in hand, the discovery process exists in order to ensure that the relevant evidence will have surfaced by the time the case is decided. Duvall and Portfolio engaged in extensive discovery. When Duvall moved for summary judgment, asserting that the record — by now presumably fully developed — was devoid of any express authorization for the incidental charges, Portfolio did not ask for a continuance under Civil Rule 56(f) or otherwise indicate that it still expected to acquire information essential to its opposition.

Instead, Portfolio countered Duvall's summary judgment motion with documents including the affidavit of sale signed by a Synchrony Bank employee and Duvall's deposition. It also offered Dreano's affidavit with four attached exhibits: the same cardmember agreement and load data offered by Duvall, more credit card account statements, the bill of sale from Synchrony Bank, and letters from Portfolio to Duvall. As discussed above, the court properly disallowed Dreano's affidavit because of her reliance on Synchrony Bank records and her lack of first-hand knowledge that would allow admission of the documents under the business records exception to the hearsay rule.

Given the remaining evidence before it, the court properly granted summary judgment on the counterclaim. The only cardmember agreement in the record was generic, unsigned, and undated. Portfolio identified it as the agreement in effect at the time of charge-off in August 2017, four years after Duvall had opened her account and seven months after her last payment. Portfolio also represented that it was the only cardmember agreement it received when it purchased the debts from Synchrony Bank. But Portfolio could not confirm that the cardmember agreement had ever been given to Duvall or that it was identical to the agreement in effect while the account was active.

Portfolio also admitted that it lacked knowledge of any different terms or conditions — in the form of "addendums" — that the bank may have sent to Duvall while it held her account.

We agree with the Ninth Circuit's *McCullough* decision that generic evidence such as this — including an unsigned, undated cardmember agreement — is insufficient to show that incidental charges were "expressly authorized by the agreement creating the debt or permitted by law."[138]  By demonstrating that discovery had failed to produce any express authorization for the charges, Duvall successfully shifted the burden to Portfolio to demonstrate the existence of a genuine issue of material fact on the issue.  Because Portfolio failed to do so, the court did not err when it granted summary judgment to Duvall on this UTPA counterclaim.[139]

> **b.**  **The superior court did not err in finding for Terry on the "unauthorized fees and charges" counterclaim following trial.**

Terry moved for summary judgment on the same counterclaim, but the court denied her motion.  Following trial, however, the court ruled in Terry's favor on the counterclaim, referencing its finding that Portfolio "failed to obtain and present admissible evidence establishing the existence of the alleged contract, and its entitlement to collect the debt."  Because express authority to collect the incidental charges in "the agreement creating the debt" was essential to the debt collector's claim,[140] Portfolio's failure to produce the contract was fatal to its defense; the court did not err by finding for Terry on the counterclaim.

---

[138]  *McCollough II*, 637 F.3d 939, 950 (9th Cir. 2011) (quoting 15 U.S.C. § 1692f(1)).

[139]  We note that even if there had been a genuine issue of material fact precluding summary judgment, the superior court would have decided the UTPA counterclaim the same way following trial, as Portfolio still failed to produce the original cardmember agreement.

[140]  15 U.S.C. § 1692f(1).

### 2. Second UTPA counterclaim: lacking the evidence or ability to get the evidence to establish ownership and validity of the debt

All three consumers also alleged that Portfolio violated the UTPA by filing suit "without having the evidence, or the ability to get the evidence, establishing its ownership and the validity of the debt in question (including, but not limited to, a complete transactional history with regard to the account)." The court in *Duvall* found in Portfolio's favor on this counterclaim, reasoning that Duvall had failed to prove that Portfolio "*could not* obtain evidence that proves that it is entitled to collect [the] debt" (emphasis in original); "[f]or example, if [Portfolio] had timely identified a records custodian from Synchrony Bank, the credit card statements detailing the specific purchases [Portfolio] alleges that [Duvall] made with a Sam's Club credit card might have been admitted." The court in *Riddle* decided the counterclaim in Riddle's favor on summary judgment, concluding that there was "an absence of a factual dispute on whether [Portfolio] has violated the UTPA by representing that it has the right to collect this debt, when it is unable to establish its ownership of the debt." And the court in *Terry* decided the counterclaim in Terry's favor following trial, concluding that Portfolio's conduct was "not only disproportionate and unfair, but deceptive" because it "insisted that it had significant evidence . . . to prove Terry's alleged debts" but in fact did not.

Challenging the decisions in *Riddle* and *Terry*, Portfolio highlights that the consumers do not specifically identify the provision of the UTPA or FDCPA it allegedly violated. But this is not determinative. The purpose of the UTPA is to "stand[] as a sentinel against unethical and unscrupulous conduct on the part of independent debt-collection businesses operating in this state."[141]    "[B]ecause the

---

[141]     *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 523 (Alaska 1980).

UTPA is a remedial statute, its language should be liberally construed."[142] While the UTPA and the FDCPA both identify specific practices as unfair or deceptive, the list is not intended to be exhaustive.[143]

We have "ruled that '[a]n act or practice is deceptive or unfair it if has the capacity or tendency to deceive.' The plaintiff need not prove that the defendant intended to deceive; it is enough to show that the acts and practices were 'capable of being interpreted in a misleading way.' "[144] And "an act or practice can be unfair without being deceptive."[145] When evaluating potential unfairness we consider factors such as these:

> (1) whether the practice . . . offends public policy as it has been established by statutes . . . , in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3)

---

[142]    *Merdes & Merdes, P.C. v. Leisnoi, Inc.*, 410 P.3d 398, 410-11 (Alaska 2017) (alteration in original) (quoting *Alaska Tr., LLC v. Bachmeier*, 332 P.3d 1, 10 (Alaska 2014) (Bolger, J., dissenting in part)).

[143]    AS 45.50.471(c) ("The unlawful acts and practices listed in (b) of this section are in addition to and do not limit the types of unlawful acts and practices actionable at common law or under other state statutes."); 15 U.S.C. §§ 1692e ("Without limiting the general application of the foregoing, the following conduct is a violation of this section[.]"), 1692f ("Without limiting the general application of the foregoing, the following conduct is a violation of this section[.]"); *Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1256 (Alaska 2007) (explaining that "[m]any other jurisdictions define 'unfair or deceptive acts or practices' to extend beyond conduct specifically prohibited by statute or common law; instead of looking for expressly prohibited conduct, these cases focus on the unfairness of the disputed practice under the specific circumstances presented" and applying this flexible approach when holding activity at issue was unfair or deceptive (citations omitted)).

[144]    *Kenai Chrysler Ctr., Inc.*, 167 P.3d at 1255 (alteration in original) (quoting *O'Neill Investigations, Inc.*, 609 P.2d at 534, 535).

[145]    *Id.*

whether it causes substantial injury to consumers (or competitors or other businessmen).[146]

"As in other jurisdictions, bad faith is not an explicit element of a private action, nor is good faith an explicit defense."[147] For example, although material misrepresentations are unfair or deceptive acts under the UTPA,[148] the act imposes liability even for "unknowing affirmative misrepresentations" made in good faith.[149] "Because the standard for a deceptive act or practice is the capacity or tendency to deceive, several state and federal courts have determined that even truthful statements can be actionable under some circumstances because of the manner in which the facts are presented"; and we have adopted this approach when applying the UTPA.[150]

The counterclaim brought by the consumers here outlines conduct that a court could reasonably find to be at least "unfair" if not also "deceptive" under the UTPA.[151] The filing of a debt-collection suit without the evidence necessary to prove it falls within the concept of unfairness as defined, or at least falls "within . . . the penumbra of some . . . established concept of unfairness."[152] And the conduct may be

---

[146] *Alaska Tr., LLC v. Ambridge*, 372 P.3d 207, 225-26 (Alaska 2016) (alterations in original) (quoting *O'Neill Investigations, Inc.*, 609 P.2d at 535); *see also Merdes & Merdes, P.C.*, 410 P.3d at 412.

[147] *Borgen v. A & M Motors, Inc.*, 273 P.3d 575, 589 (Alaska 2012).

[148] AS 45.50.471(b)(6), (12).

[149] *Borgen*, 273 P.3d at 587.

[150] *Id.* at 589.

[151] *Id.* at 591 ("[Unfair and deceptive] are used in the disjunctive in section .471(a), and either will suffice to give rise to liability. Whether an act is 'unfair' is determined by using the flexible [multi-factor] standard[], whereas whether an act is 'deceptive' is determined simply by asking whether it 'has the capacity or tendency to deceive.' " (quoting *ARSC Energy Servs. Power & Commc'ns, LLC v. Golden Valley Elec. Ass'n*, 267 P.3d 1151, 1159 (Alaska 2011)).

[152] *Alaska Tr., LLC v. Ambridge*, 372 P.3d 207, 225-26 (Alaska 2016) (quoting *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 535 (Alaska 1980)).

oppressive, injuring consumers by forcing either a settlement — ultimately unjustified by the plaintiff's supporting documentation — or the expense and headache of litigation. It can also be deceptive — misleading the consumer into believing that the debt collector has the ability to prove its claim.

Portfolio argues that to prevail on this counterclaim the consumer "needed to establish not only that [Portfolio] lacked evidence of its ownership of the [a]ccount, but also that [Portfolio] lacked 'the ability to get' such evidence." The superior court in *Duvall* accepted this argument, reasoning that Portfolio may have succeeded on its claim had it been better prepared with the appropriate witnesses. But we conclude that the lack of the necessary evidence, and the inability to get the necessary evidence, are ultimately the same thing in the context of litigation. The time for gathering the evidence sufficient to support any claim is not open-ended. If the debt collector does not have the evidence necessary to prove that it owns the debt at the time of summary judgment or trial, it demonstrates that it lacks the ability to get such evidence when it is needed.

The Sixth Circuit has held that a debt collector may file a collection suit "without the immediate means of proving the existence, amount, or true owner of the debt" and that such an act standing alone would not be unfair or deceptive.[153] New York courts agree: "The fact that the debt buyer lacks such documentary proof, when commencing the action, cannot by itself be deemed a deceptive practice."[154] But "admissible proof that would make out a prima facie case" should be "readily obtain[able]," including "evidence that it actually owns the debt, that the defendant was given notice of the assignment, and that the underlying debt claim is meritorious."[155]

---

[153]   *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 333 (6th Cir. 2006).

[154]   *Midland Funding, LLC v. Giraldo*, 961 N.Y.S.2d 743, 753-54 (Nassau Dist. Ct. 2013).

[155]   *Id.* at 755.

The Ninth Circuit explained in *McCollough* that a debt collector's action "was invalid because [it] presented no admissible evidence establishing its entitlement to collect the fees *at the time of the summary judgment motion* — not at the time it filed suit."[156]

Portfolio also argues that it can defend against this counterclaim by demonstrating that it has evidence, which does not necessarily have to be *admissible* evidence. It contends that failing to have all its evidence admitted does not mean that it would have failed to prove its claim had the evidentiary rulings been different. But this reasoning ignores the nature of the unfairness at issue, which is requiring a consumer to defend against a claim which ultimately cannot be proven in court.

Duvall does not challenge the superior court's decision that she failed to prove Portfolio's categorical inability to get the evidence necessary to prove its contract claim. In *Riddle*, we conclude that the superior court did not err by granting summary judgment to Riddle on this counterclaim. And in *Terry*, we conclude that the superior court did not clearly err in finding for Terry on this counterclaim following trial.

### E. The Statutory Damages Awards

Under the UTPA's treble damages provision, "[a] person who suffers an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by [the UTPA] may bring a civil action to recover for each unlawful act or practice three times the actual damages or $500, whichever is greater."[157] We interpreted "ascertainable loss" broadly in *Jones v. Westbrook*, when we held that a lawyer's former client suffered an "ascertainable loss" for purposes of commencing the statute of limitations on a UTPA claim against his lawyer when the Internal Revenue Service recorded a security interest in the client's former business assets, preempting his ability to claim a prior lien on the same assets.[158] Other states' courts have allowed

---

[156] *McCollough II*, 637 F.3d 939, 950 (9th Cir. 2011) (emphasis in original).

[157] AS 45.50.531(a).

[158] 379 P.3d 963, 970 (Alaska 2016).

minimal expenses to trigger statutory damage awards under consumer protection statutes.[159]

We have never held, however, that attorney's fees may qualify as "ascertainable loss" under the UTPA. Attorney's fees are expressly addressed under a different UTPA provision, AS 45.50.537, which provides full reasonable attorney's fees to a private individual who prevails on a UTPA claim.[160] An award of full reasonable attorney's fees, as well as statutory damages based solely on those same attorney's fees, strikes us as a double recovery the legislature could not have intended.[161]

### 1. The superior court did not err in finding that Riddle established "ascertainable loss" necessary for statutory damages.

After deciding Riddle's case on summary judgment — including ruling for her on one of her UTPA counterclaims — the superior court invited the parties to brief the issue of whether she had suffered the ascertainable loss necessary to support a

---

[159] DEE PRIDGEN & JOLINA C. CUARESMA, CONSUMER PROTECTION AND THE LAW § 5:11 (2024) ("Minimal expenses incurred in order to obtain a loan, transportation expenses and lost interest income, or just having to defend a lawsuit have been considered sufficient to fulfill the ascertainable loss requirement or its equivalent."); *see, e.g.*, *Wiginton v. Pac. Credit Corp.*, 634 P.2d 111, 118-19 (Haw. App. 1981) (acknowledging *de minimis* damages of $25 related to parking and car wear and tear to meet with attorney as sufficient for claim under Hawaii consumer protection statute); *Homsi v. C. H. Babb Co.*, 409 N.E.2d 219, 222 (Mass. App. 1980) (including travel expenses and lost hourly wages in compensable damages).

[160] AS 45.50.537(a).

[161] *See Amerada Hess Pipeline Corp. v. Reg. Comm'n of Alaska*, 176 P.3d 667, 679 (Alaska 2008) (noting that "[a]n avoidance of any double recovery accords with lay notions of fairness and common sense"); *Child Support Recovery Servs., Inc. v. Inn at the Waterfront, Inc.*, 7 P.3d 63, 71 (Alaska 2000) ("In Alaska, the law tries to avoid double recovery unless it is clearly intended as a policy matter."); *see also State v. Fyfe*, 370 P.3d 1092, 1100 (Alaska 2016) (noting that when interpreting statutes we assume "that the legislature chose its words deliberately, avoided redundancies, and omitted words it intended to omit").

statutory damages award. Riddle submitted a supplemental affidavit asserting that because of the litigation she had incurred parking expenses and lost wages while visiting her lawyers, as well as attorney's fees; the court found that this "adequately established" an ascertainable loss. It awarded Riddle $500 in statutory damages because of her success on the counterclaim.

Portfolio contends that this was error for a number of reasons. It argues that Riddle failed to timely disclose in discovery the information she gave in her affidavit; that she failed to distinguish between costs incurred in her defense and those incurred to advance the successful counterclaim; and that her claim was inadequately supported because the UTPA does not compensate for hypothetical losses and her only proof of damages was her own "self-serving" declaration. Portfolio also argues that attorney's fees cannot be ascertainable loss for purposes of the UTPA. We agree with Portfolio's last point, as noted above, but we conclude that the damages award was otherwise adequately supported.

Alaska Civil Rule 26(a)(1)(G) requires parties to disclose "all categories of damages claimed" as part of their initial disclosures. Riddle filed her initial disclosures before she asserted her UTPA counterclaims; she then supplemented her responses to Portfolio's interrogatories, as required by Rule 26(e), to describe the damages she sought for her counterclaims. She wrote that she "incurred damages consisting of the attorney's fees and litigation expenses incurred in defending against plaintiff[']s unfair and/or deceptive collection action." Though vague, this was sufficiently descriptive to prompt Portfolio to question her about the specifics of the "litigation expenses incurred" if it felt the need to do so.

As for whether Riddle was required to differentiate between damages incurred in her defense and those incurred in pursuing the counterclaim, we do not consider the difference significant in this context. Statutory damages are recoverable by persons who suffer ascertainable loss "as a result of another person's [unlawful] act

or practice."[162]  The UTPA violation here is Portfolio's bringing of the contract claim without the evidence necessary to prove it.  The consequences of this act included not just the defense of the contract claim but also the pursuit of the counterclaims.  In any event, some of Riddle's claimed expenses — for parking when she visited her lawyer's office — were incurred before she filed the UTPA counterclaims and constitute ascertainable loss even if considered alone.

Finally, we reject Portfolio's argument that Riddle cannot rely on a "self-serving" affidavit to substantiate her claimed "ascertainable loss."  The purpose of the UTPA treble damages provision is to encourage litigants' use of the courts to pursue consumer protection claims,[163] and a high evidentiary bar for a relatively nominal statutory damages award seems inconsistent with this purpose.  A court may reasonably conclude that testimony given under the threat of perjury, whether by affidavit, deposition, or at trial, sufficiently demonstrates "ascertainable loss."  And we find no fault with the superior court's conclusion that Portfolio "had more than adequate opportunity to make a record and cross-examine Riddle on this point" at her deposition.

In sum, although we disagree with the superior court's partial reliance on the fact that Riddle's "attorneys have put in countless hours litigating the case" for its finding of ascertainable loss, its decision to award statutory damages has other support in the record, and we therefore affirm it.

### 2. The superior court did not err by awarding Terry $1,000 in statutory damages.

Portfolio reiterates many of the same arguments it makes in *Riddle* in arguing that Terry is not entitled to statutory damages either; its arguments fail for the

---

[162]    AS 45.50.531(a).

[163]    *Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1260 (Alaska 2007) (explaining that historic purpose of UTPA's treble damages provision is to encourage litigation of unfair practices and "ensure" that litigants are "adequately compensated for their efforts").

same reasons. Unique to *Terry*, Portfolio argues that the superior court erred when it awarded Terry $1,000 — twice the statutory damage award "for each unlawful act"[164] — because despite Terry's success on two counterclaims there was essentially only a single UTPA violation: Portfolio's pursuit of a debt without adequate proof of its ownership.

The court in Terry found two violations of the UTPA. First, it found that Portfolio violated the UTPA by bringing its contract claim at all, since it did not have the evidence or the ability to obtain the evidence establishing its ownership and the validity of the debt. Second, the court found that Portfolio violated the UTPA by attempting to collect fees not expressly authorized by the agreement creating the debt. Although these violations are both based on Portfolio's lack of evidence sufficient to prove the terms of the underlying agreement, they are still separate violations.

Also distinct from *Riddle*, the court in *Terry* "decline[d] to extend 'losses' to include gas and parking," thus appearing to base its finding of "ascertainable loss" solely on attorney's fees. As explained above, we conclude that gas and parking expenses constitute ascertainable loss while attorney's fees do not.[165] But "[w]e may affirm the superior court on any basis appearing in the record."[166] As in *Riddle*, Terry attested to litigation-related transportation expenses, which constitute ascertainable loss. Because of this independent support in the record, we affirm the damages award in *Terry*.

---

[164]  AS 45.50.531(a).

[165]  *See supra* Part IV.E.

[166]  *Ennen v. Integon Indem. Corp.*, 268 P.3d 277, 281 (Alaska 2012) (quoting *Far N. Sanitation, Inc. v. Alaska Pub. Utils. Comm'n*, 825 P.2d 867, 869 n.2 (Alaska 1992)).

### F. Attorney's Fees

The final issue before us in these three cases is attorney's fees. Trial courts have "broad discretion" in formulating awards of attorney's fees to prevailing parties.[167] Duvall and Riddle contend that the superior courts in their cases abused this discretion by failing to award them full attorney's fees. In Terry's case, where the superior court did award full attorney's fees, Portfolio contends that this was an abuse of discretion.

Prevailing parties in civil litigation are usually entitled to recover partial attorney's fees pursuant to the schedule laid out in Alaska Civil Rule 82(b). But in an "action brought by a private person under [the UTPA]," AS 45.50.537(a) displaces Rule 82 and entitles a prevailing plaintiff to "full reasonable attorney fees at the prevailing reasonable rate." Fees awarded under a full fee statute are generally limited to those for work performed on the successful statutory claim.[168]

---

[167]  *Reeves v. Godspeed Props., LLC*, 517 P.3d 31, 43 (Alaska 2022) (quoting *Schultz v. Wells Fargo Bank, N.A.*, 301 P.3d 1237, 1241 (Alaska 2013)); *see also All. of Concerned Taxpayers, Inc. v. Kenai Peninsula Borough*, 273 P.3d 1123, 1126 (Alaska 2012) ("A prevailing party is 'one who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of the original contention.' " (quoting *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 721 (Alaska 2003))); *State, Dep't of Corr. v. Anthoney*, 229 P.3d 164, 167 (Alaska 2010) ("Even a plaintiff who recovers on only one claim may be designated the prevailing party.").

[168]  *See, e.g.*, *Guilford v. Weidner Inv. Servs., Inc.*, 522 P.3d 1085, 1105 (Alaska 2023) (concluding that when plaintiff brought both successful claim under Uniform Residential Landlord and Tenant Act (URLTA) and personal injury claim in same action, superior court correctly applied URLTA's full fee provision to URLTA claim and Civil Rule 82 to personal injury claim); *Meyer v. Stand for Salmon*, 450 P.3d 689, 691 (Alaska 2019) (concluding that prevailing constitutional claimant may recover attorney's fees under constitutional claimant statute for work "devoted in any reasonably connected way to the constitutional claims on which it prevailed" but may not recover fees for work "devoted solely to the constitutional claims on which it did not prevail"); *Adkins v. Collens*, 444 P.3d 187, 197 (Alaska 2019) (noting that superior court "awarded [prevailing plaintiff] attorney's fees in accordance with Alaska Civil

If statutory and non-statutory claims "involve a common core of facts or [are] based on related legal theories," dividing fees by claim may be difficult.[169] In general, the evidentiary burden to establish which fees are associated with which claims — and thus whether they are covered by the full fee statute or Rule 82 — rests with the party requesting fees.[170] And the requesting party must include sufficient detail to distinguish which fees were incurred on which claim.[171]

Attorney's fees under the UTPA are calculated through the two-step "modified lodestar" method.[172] First, a trial court must "calculate a baseline attorney's fee award by determining the reasonable number of hours the attorney worked and multiplying that by a reasonable hourly rate."[173] In the second step, the trial court has the discretion to either enhance or decrease the baseline amount — the "lodestar" — to reach a final fee award.[174] In this adjustment a trial court may consider a number of factors, including what are known as the *Johnson-Kerr* factors.[175] A trial court may

---

Rule 82(b)(1) for his successful [tort] and punitive damages claims" and "then determined attorney's fees for [plaintiff's] UTPA claim per AS 45.50.537(a)").

[169] *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

[170] *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet 'the burden of establishing entitlement to an award.' " (quoting *Hensley*, 461 U.S. at 437)).

[171] *Guilford*, 522 P.3d at 1107 n.123 ("Distinguishing between the nature of the claims is only one step in properly awarding attorney's fees when more than one fee regime is involved. To properly allocate attorney's fees, the parties and superior court must also distinguish which fees were incurred on which claims."); *see also Manning v. State, Dep't of Fish & Game*, 355 P.3d 530, 540 (Alaska 2015).

[172] *Adkins*, 444 P.3d at 199.

[173] *Id.*

[174] *Id.*

[175] *Id.* The *Johnson-Kerr* factors include:
     (1) The time and labor required . . .

also "draw on its experience with [analogous factors from other statutes] when determining how to calculate a baseline reasonable rate award and whether to enhance or decrease that baseline amount."[176]

### 1. The superior court did not abuse its discretion in its fee award to Duvall.

After finding Duvall to be the prevailing party, the superior court awarded her attorney's fees under both the UTPA and Rule 82. First, for work performed before May 3, 2021 — when the court granted Duvall summary judgment on her one successful UTPA counterclaim — the court awarded 50% of her fees pursuant to the

---

(2) The novelty and difficulty of the questions involved . . .
(3) The skill requisite to perform the legal service properly . . .
(4) The preclusion of other employment by the attorney due to acceptance of the case . . .
(5) The customary fee . . .
(6) Whether the fee is fixed or contingent . . .
(7) Time limitations imposed by the client or the circumstances . . .
(8) The amount involved and the results obtained . . .
(9) The experience, reputation, and ability of the attorneys . . .
(10) The "undesirability" of the case . . .
(11) The nature and length of the professional relationship with the client . . .
(12) Awards in similar cases.

*Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992)).

[176] *Id.* at 200-01 (holding that *Johnson-Kerr* factors for calculating reasonable attorney's fees under modified lodestar are similar to factors for reasonable attorney's fees that court considers under Alaska Rules of Professional Conduct and Alaska Bar Rules); *see also* Alaska R. Prof. Conduct 1.5(a); Alaska Bar R. 35(a).

UTPA, reduced to reflect her work on the unsuccessful counterclaims and her defense of Portfolio's contract claim. The court reasoned that it was "impossible to allocate a specific amount of attorney fees to work performed in relation to each category," and besides, "there [was] overlap between the successful UTPA claim and the others." Of the remaining fees, including work on Duvall's attorney's fees motion, the court awarded 30% pursuant to the Rule 82 schedule.

Duvall argues that when a full fee statute such as the UTPA governs only some of the claims in a lawsuit, the court must award full fees for all work that relates "in any reasonably connected way" to the statutory claim,[177] including work on "general procedural issues," which the court must presume is related to the statutory claim. Duvall argues that the court abused its discretion when it awarded only 50% of the pre-May 3 billings under the UTPA; she contends that nearly all that work was reasonably connected to her successful UTPA counterclaim. She also argues that the court erred when it applied Rule 82 to the remaining billings without recognizing that "much of this work was still reasonably connected to [her] successful UTPA counterclaim and thus *fully* compensable under AS 45.50.537(a)." (Emphasis in original.) She faults the trial court for not making an effort "to precisely determine" based on her billing records "how much of the work was reasonably connected to [her] successful UTPA counterclaim and how much was solely devoted to other claims." And she contends that Portfolio could have helped the process along by "point[ing] out to the trial court which times entries [Portfolio] thought were *solely* devoted to the other claims." (Emphasis in original.)

Duvall's argument misapprehends how the burden is allocated on a motion for statutory attorney's fees. As the party seeking fees, Duvall had the

---

[177] *See Meyer v. Stand for Salmon*, 450 P.3d 689, 691 (Alaska 2019) (agreeing that constitutional claimant was "entitled to recover attorney's fees devoted in any reasonably connected way to the constitutional claims on which it prevailed").

responsibility to indicate which work, procedural or otherwise, was reasonably connected to the successful UTPA counterclaim.[178] Our presumption in *Manning* that procedural work fell within the different statutory scheme at issue in that case — the constitutional litigant statute, AS 09.60.010(c) — does not apply here; it applied in *Manning* because it was the parties who had successfully *defended* against the constitutional claims that were seeking fees, and the burden was thus on them, as the applicants, to prove that the fees they sought to recover were *not* incurred in the area protected by statute.[179]

Here, Duvall, as the applicant, did not segregate fees by claim or otherwise indicate for the court which fees pertained to which claims. This led the court to rightly conclude that it was "impossible to allocate a specific amount of attorney fees to work performed in relation to each category," and it therefore awarded only 50% of the fees incurred before the summary judgment ruling. Duvall labels this a "pro rata" approach — i.e., awarding "a percentage of attorney's fees based on the ratio of full-fee claims to other claims" — an approach we disapproved in *Manning*.[180]

The superior court in *Manning* had awarded the prevailing defendants "attorney's fees for 50% of work for which the nature of the claims involved was not identified" based on the court's "conclusion that 15 of Manning's 30 counts involved

---

[178] *See Manning v. State, Dep't of Fish & Game*, 355 P.3d 530, 540 (Alaska 2015) ("On remand, the superior court should not award attorney's fees for work on a procedural issue unless the applicant provides the requisite documentation that the procedural issue is related solely to a non-constitutional claim."); *id.* ("Defendants seeking attorney's fees for work on non-constitutional claims must 'submit appropriate documentation to meet "the burden of establishing entitlement to an award." ' " (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011))); *Meyer*, 450 P.3d at 693 (Winfree, J., concurring) (noting that "since at least our *Manning* decision, . . . the need to segregate fees [by claim in constitutional litigation] should come as no surprise").

[179] *Manning*, 355 P.3d at 540.

[180] *Id.*

constitutional claims."[181] We rejected this shorthand approach and remanded for consideration of whether the claimed attorney's fees were related to constitutional or non-constitutional claims; in doing so we stressed that the burden of demonstrating the connection (or non-connection, as the case may be) was on the prevailing parties seeking fees and that their failure to carry the burden meant that "fees associated with that work cannot be awarded, even in part."[182] Emphasizing that "the court must ensure that fees are not awarded for work involving constitutional claims," we notably declined to "hold that a superior court can never award partial fees for work when the type of claim cannot be clearly identified."[183]

Thus, what we disapproved in *Manning* was using a pro rata approach as a substitute for deliberate consideration of whether attorneys' work was actually related to the claims that fell within the statute's coverage. The superior court in Duvall's case did not take this shortcut; it reviewed the documentation Duvall submitted with her fees claim and concluded that she had not met her burden of identifying how the work was related to the successful UTPA counterclaim. This was not an abuse of discretion.

We also conclude that the court did not abuse its discretion when it applied the Rule 82 schedule to the remaining attorney's fees. Duvall contends that the court erred by concluding that work following the grant of partial summary judgment on the one successful UTPA claim cannot have been UTPA-related; she notes that because summary judgment did not decide the issue of damages — which remained unresolved until the court's "final substantive order in this case" following trial — at least some of the work in those later phases of the case must have been UTPA-related and therefore fully compensable under AS 45.50.537(a). But while this is likely true, it again attempts

---

[181]     *Id.*

[182]     *Id.* (quoting *Harris v. Maricopa Cnty. Superior Ct.*, 631 F.3d 963, 973 (9th Cir. 2011)).

[183]     *Id.*

— mistakenly — to transfer the burden of identifying that UTPA-related work from Duvall to the court. Duvall has at no point identified specific time entries for work related to her damages claim. The court did not abuse its discretion in its application of the Rule 82 schedule.

## 2. Apparent conflict between the court's specific findings about the reasonableness of Riddle's fees and the percentage it awarded prevents meaningful appellate review.

In *Riddle*, similarly, the superior court awarded attorney's fees under both the UTPA and Rule 82. For work completed before Riddle amended her answer to include UTPA counterclaims, the court awarded 20% of her attorney's fees under Rule 82(b)(2). The court determined most of the remaining work was compensable under the UTPA.[184] But "given that both sides engaged in excessive litigation," the court did not award full fees, instead reducing the award by 40%. Riddle argues that this reduction was an abuse of discretion.

The superior court made a number of specific findings in support of its attorney's fees award. It observed that Portfolio's dispute was not with Riddle's attorneys' hourly rates, which the court agreed were reasonable, but rather with "the reasonableness of the total number of hours billed, which is a seemingly large amount of time for such a small debt." But the court further noted that Portfolio had "not submit[ted] its own billings to show that Ms. Riddle's attorneys billed excessive hours," and upon reviewing the billing statements themselves the court found nothing that seemed "unnecessary or out of the ordinary." It continued: "While perhaps disproportionate to the amount in controversy, in light of the fiercely contested nature of this case and [Portfolio's] own litigation tactics, the 228.8 hours appears to be

---

[184] The superior court excluded from this 50% UTPA award (1) the work preceding Riddle's amended answer raising the UTPA counterclaims, which she agreed should be compensated instead under Rule 82, and (2) the work related to litigating the attorney's fees issues, which the court awarded at 100% pursuant to AS 45.50.537(a).

reasonable and have been necessarily incurred."  After subtracting 20.3 hours that the parties agreed should be excluded from the baseline, the court reiterated that "[b]ased on the history of this case, [it could not] say that the total number of hours was unreasonable."

Having settled on a baseline of reasonable hours expended times a reasonable hourly rate, the court moved on to consider "whether any of the *Johnson-Kerr* factors justify deviating from that baseline."  The court considered two factors: the "results obtained" and "awards in similar cases."[185]  The one "similar" case Portfolio put forward for comparison purposes was *Duvall*, where the superior court had awarded 50% of the fees incurred.  The *Riddle* court found, however, that Porfolio had failed to "provide sufficient context to convince this court that [*Duvall*] is necessarily similar to this case."

As for the other *Johnson-Kerr* factor, "the results obtained," the court observed that Riddle had "only sought $500 in statutory damages" and was awarded the full amount sought.  It stated that "[m]erely because the amount of recovery is disproportionate to the total attorney's fee requested does not connote a lack of success" but rather "highlights . . . that this case was more about principles and not the underlying debt."

The court repeated this "fighting over principle" observation several times in the course of its eight-page order, finding that "[a]s a result, both sides are responsible for driving up costs at every turn."  But though faulting both sides, the court found Portfolio's argument that Riddle's small recovery was "grossly disproportionate to the amount of fees" to "ring[] hollow," as Portfolio "was equally aggressive in its litigation of its modest claim and its efforts were equally disproportionate to the amount at stake."

---

[185]  *See Adkins v. Collens*, 444 P.3d 187, 199 (Alaska 2019).

Trial courts need to "make sufficient findings to permit meaningful review of an attorney's fees award."[186] Here, because the superior court expressly found that the total number of hours Riddle expended on the litigation was both reasonable and made necessary by the "equally aggressive" litigation tactics on the other side, we are troubled by the court's ultimate conclusion that only "60% of [Riddle's] fee request [was] reasonable" because "both sides engaged in excessive litigation." The governing statute requires an award of "full reasonable attorney fees at the prevailing reasonable rate."[187] Although trial courts may adjust the baseline on consideration of the various *Johnson-Kerr* and other relevant factors, the superior court here considered factors put forward by the parties and appears to have declined to find that any of them justified an adjustment to the baseline.

In *Kenai Chrysler Center, Inc. v. Denison*, we upheld a superior court's 20% reduction of what would otherwise have been a full fee award under the UTPA.[188] "In reducing the requested fees, the [superior] court [had] explained that, while it 'does not challenge the accounting or the hourly rate, it does find that the time spent in pursuit of the claim was more than should be reasonably charged to the Defendants under the circumstances in this case.' "[189] We determined that "the UTPA's full reasonable fee provision gave the superior court . . . broad discretion to decide whether the [claimants']

---

[186] *State v. Schmidt*, 323 P.3d 647, 668 (Alaska 2014); *see also Krone v. State, Dep't of Health & Soc. Servs.*, 222 P.3d 250, 258 (Alaska 2009), *abrogated on other grounds by Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273 (Alaska 2015) ("[The superior court's] ultimate conclusion should be reached only after express consideration of all factors relevant to a determination of full reasonable fees for a claimant who prevails on constitutional claims.").

[187] AS 45.50.537(a).

[188] 167 P.3d 1240, 1260-61 (Alaska 2007).

[189] *Id.* at 1261.

proposed fees were reasonable under the totality of the circumstances presented."[190] We noted that although "the court did not question the number of hours actually billed or the hourly rate of the billings," it "nevertheless reduced the amount the [claimants] requested by twenty percent to reflect the fees that the court believed to be reasonable based on its own observations."[191] We held that the UTPA permitted this approach and that the court did not abuse its discretion by making the reduction.[192]

But here the superior court expressly found that Riddle's fees were "reasonable and ha[d] been necessarily incurred." It forcefully rejected Portfolio's contention that the amount of attorney's fees was "grossly disproportionate" to the result obtained, and it at least strongly implied that "the time spent in pursuit of the claim" was made necessary by the fact that both sides were fighting over principle and had equally zealous representation. Attorney's fees made necessary by the "aggressive" and "excessive" litigation on the other side are nonetheless necessary, and the court appears to have thought the same.

We understand the superior court's frustration with the amount of time and other resources devoted to this relatively small-recovery case. But we are stymied in our "meaningful review" of the fee award because of our difficulty squaring the court's specific findings about the fees' reasonableness, necessity, and proportionality with its more general conclusion that Riddle's fees request was unreasonable due to "excessive litigation" on both sides. We direct the court on remand to reconsider this aspect of its award and either adjust the amount awarded or clarify the findings that relate the amount awarded to Riddle's conduct of the litigation.

---

190    *Id.*

191    *Id.*

192    *Id.*

-71-                                                                        7771

**3. There was no abuse of discretion in the fee award to Terry except for a small error to be corrected on remand.**

The superior court found Terry to be the prevailing party and awarded her the full amount of attorney's fees she requested under the UTPA. Portfolio challenges the award on a number of grounds. We reject its arguments except with regard to a relatively minor correction that Terry agrees should have been made.

First, Portfolio contends that the court failed to properly consider whether to adjust the "baseline attorney's fee award" — "the reasonable number of hours the attorney worked [multiplied] by a reasonable hourly rate"[193] — by reference to the *Johnson-Kerr* factors. Portfolio notes that the court listed these factors but then simply referenced Terry's discussion of them in her motion and "decline[d] to adjust the requested attorney fees award." But the court did specifically find that Terry's fees "reflect[ed] a reasonable amount of work, considering the time and labor involved"; it also cited, in support of the reasonableness of the fees, "the novelty of the claims and defenses; the skill requisite to complete the legal service; the preclusion of other employment by the attorney due to acceptance of the case; and the experience, reputation, and ability of the attorneys," all of which are *Johnson-Kerr* factors.[194] As noted above, trial courts need to "make sufficient findings to permit meaningful review of an attorney's fees award."[195] Here, the court's reference to the factors, its apparent agreement with Terry's discussion of them,[196] and its express refusal to adjust the

---

[193] *Adkins v. Collens*, 444 P.3d 187, 199 (Alaska 2019).

[194] *See id.*

[195] *State v. Schmidt*, 323 P.3d 647, 668 (Alaska 2014).

[196] *See, e.g., Jacob G. v. Savanah F.*, 545 P.3d 885, 997 (Alaska 2024) (stating that when "superior court denied [one party's] motion for attorney's fees without explanation, . . . [w]e assume the superior court agreed with one or both of the arguments the [other party] made when opposing the motion for fees"); *SMJ Gen. Constr., Inc. v. Jet Com. Constr., LLC*, 440 P.3d 210, 213 (Alaska 2019) (noting that

baseline up or down show clearly that it considered the factors and concluded that none of them justified an adjustment to the baseline; this is sufficient for our review.

Second, Portfolio contends that the court erred by designating Terry the prevailing party, given that she "prevailed on only two of her three UTPA counterclaims." Portfolio points out that Terry dropped one of the UTPA counterclaims after trial and did not actively pursue her claim for injunctive relief.[197] But Terry successfully defended against Portfolio's contract claim, prevailed on two of her UTPA counterclaims, and was awarded the statutory damages she sought. A party does not need to succeed on every claim in order to be the prevailing party.[198] Given the extent of Terry's success, we see no abuse of discretion in the superior court's prevailing party determination.[199]

Third, Portfolio argues that Terry's partial success means that she should have been awarded no more than two-thirds of the amount she requested. But a pro rata reduction is no substitute for the proper test, which, as explained above, is whether the lawyer's work relates "in any reasonably connected way" to the statutory claim.[200] Portfolio identifies three categories of work which it contends clearly failed to meet this

---

where superior court failed to explain its reasoning for granting motion to dismiss, "we assume the court adopted [the moving party's] arguments for dismissal").

[197] Terry explained in a footnote to her written closing argument that the third counterclaim — based on Portfolio's attempt to collect fees and charges that had allegedly been reversed by the original creditor — was subsumed in its second counterclaim, challenging Portfolio's pursuit of amounts not expressly authorized by the cardholder agreement or law.

[198] *State, Dep't of Corr. v. Anthoney*, 229 P.3d 164, 167 (Alaska 2010) ("Even a plaintiff who recovers on only one claim may be designated the prevailing party.").

[199] *See Lee v. Konrad*, 337 P.3d 510, 525 (Alaska 2014) ("The prevailing-party determination is within the broad discretion of the trial court.").

[200] *Meyer v. Stand for Salmon*, 450 P.3d 689, 691 (Alaska 2019) (agreeing that constitutional claimant was "entitled to recover attorney's fees devoted in any reasonably connected way to the constitutional claims on which it prevailed").

test. The first two are for 1.7 hours of attorney time preceding Terry's filing of the UTPA counterclaims and .7 hours devoted to the unsuccessful claim for injunctive relief, totaling $852.50 in fees. Terry conceded at her motion for attorneys' fees that these fees should have been excluded from the baseline; it was therefore error for the court to include them.[201]

Portfolio argues that there is an additional 3.3 hours of attorney time, totaling $1,515 in fees, that should have been excluded because the billing entries are too vague to support a conclusion that the work was reasonably connected to Riddle's successful UTPA claims. Most of these entries concern lawyers conferring with each other about discovery issues and strategy. Given the interrelatedness of the issues in the case and where these challenged entries appear in the timeline, we decline to second-guess the superior court's evident conclusion that they involved work that was more specifically described and compensable.

Portfolio next contends that "two of the *Johnson-Kerr* factors in particular required further reduction to the baseline award," the first being "[t]he amount involved and the results obtained."[202] Portfolio stresses the disproportionality between the statutory damages award and the fees incurred to achieve it, contending that "[t]he trial court should have reduced the $97,882.50 lodestar amount to make the fee award proportionate to Terry's 'moderate success' in this case." But proportionality is not a goal of statutory fee awards; in fact, statutory fee provisions often exist because

---

[201]    Terry argues that the court's failure to exclude the $852.50 is offset by its erroneous exclusion of $1,847.50 in fees incurred for her reply in support of her fees motion, and that we can affirm the award on this alternative basis. *See Nicolos v. North Slope Borough*, 424 P.3d 318, 325 (Alaska 2018) ("[A]n appellee may urge . . . in defense of a decree or judgment any matter appearing in the record." (quoting *Ransom v. Haner*, 362 P.2d 282, 285 (Alaska 1961))). But because the record does not inform us why the superior court excluded that amount, we do not adopt that alternative ground for affirmance.

[202]    *See Adkins v. Collens*, 444 P.3d 187, 199 (Alaska 2019).

legislatures saw small fee recoveries as a disincentive to socially useful litigation. As we explained in *Adkins v. Collens*, the UTPA fee-shifting provision "indicates the intent to encourage private lawsuits by providing more generous attorney's fee awards than those available under Rule 82."[203]

Finally, we acknowledge the difference in fee awards between Duvall's recovery and Terry's despite the similarity of claims and results. In *Duvall*, where the successful UTPA counterclaim was decided on summary judgment, the court considered the fees incurred up to that point and awarded only 50% of them, citing the impossibility of "allocat[ing] a specific amount of attorney fees to work performed in relation to each category." In *Terry*, where the UTPA counterclaims were resolved in Terry's favor at trial, the court awarded full fees under the UTPA despite the fact that Portfolio's contract claim was also decided at trial. But these results are not inconsistent. In *Duvall*, it was clear to the superior court that some of the time expended before summary judgment was devoted to defending against the contract claim and to the unsuccessful UTPA counterclaims. In *Terry*, the superior court could reasonably conclude that all the time spent successfully defending against the contract claim through trial also related in some "reasonably connected way" to the successful UTPA counterclaim.[204] Both awards fall within the superior courts' broad discretion.

## V.     CONCLUSION

The judgments of the superior courts in *Duvall*, *Riddle*, and *Terry* are AFFIRMED, with two exceptions. The attorney's fees award in *Riddle* is REMANDED to the superior court for reconsideration in accordance with this opinion. The attorney's fees award in *Terry* is REMANDED to the superior court for subtraction of the amount of $852.50 that the parties agree should not have been included in the baseline.

---

[203]     *Id.* at 198.

[204]     *See Meyer*, 450 P.3d at 691.